FILED
United States Court of Appeals
Tenth Circuit

March 18, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

BIODIVERSITY CONSERVATION
ALLIANCE,

 Plaintiff-Appellee,

v.

RICHARD C. STEM, in his official
capacity as Deputy Regional Forester of
the Rocky Mountain Region of the United
States Forest Service; UNITED STATES
FOREST SERVICE, a Federal Agency
within the United States Department of
Agriculture,

 Defendants-Appellants.

No. 07-1061

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 04-CV-01816-JLK)**

John E. Arbab, Attorney (David C. Shilton, Attorney, Matthew J. McKeown, Acting
Assistant Attorney General, and Kenneth S. Capps, of Counsel, Appellate Section of the
United States Department of Justice, with him on the briefs), for Defendants-Appellants.

Matt Kenna, Western Environmental Law Center, Durango, Colorado (Brad A. Bartlett
and Travis Stills, Durango, Colorado, with him on the brief), for Plaintiff-Appellee.

Before **O'CONNOR**, Associate Justice (Ret.),* **HENRY**, Chief Circuit Judge, and **TACHA**, Circuit Judge.

---

**O'CONNOR**, Associate Justice (Ret.).

---

The United States Forest Service appeals from the district court's award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U. S. C. § 2412(d) to plaintiff Biodiversity Conservation Alliance ("BCA").  Because we hold that plaintiff was not a "prevailing party" in the underlying litigation, we reverse the district court's award of fees and remand for proceedings consistent with this opinion.

## I.

The EAJA provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action."  28 U. S. C. § 2412(d).  BCA claims it is entitled to attorneys' fees under the EAJA as a "prevailing party" because of victories it obtained in a dispute over defendant United States Forest Service's proposed usage of land in the Black Hills National Forest.

In 2003, the Forest Service came up with several proposals for the management and future development of the Black Hills National Forest.  One of the proposals, called the Cement Project, included a sale of timber in the Cement Area of that forest.  The Forest Service sought an environmental assessment of this sale and concluded that there

---

* The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), sitting by designation pursuant to 28 U. S. C. § 294(a).

2

would be no significant environmental impact. As a result, the Forest Service authorized the sale of several thousand acres of timber in the Cement Area.

BCA, who had registered its opposition to the Cement Project before the agency, filed suit in 2004. It claimed that the Forest Service's actions with regards to the Cement Project violated the National Environmental Policy Act ("NEPA") and the Administrative Procedures Act ("APA") because the Forest Service acted arbitrarily and capriciously in failing to evaluate a reasonable range of alternatives, failing to take a hard look at the direct, indirect, and cumulative impacts of the Cement Project. BCA also claimed that the Forest Service violated the National Forest Management Act ("NFMA") and the APA by failing to comply with NFMA's regulations governing viable populations of sensitive and indicator species.

After filing suit, BCA moved for a preliminary injunction in order to halt the imminent timber sale. The district court granted the motion. In so doing, it explained that "as a preliminary matter, the Plaintiff will suffer irreparable injury" due to the possibility of permanent species loss. Because "the equities tip[ped] heavily towards the movant," the district court only required that plaintiff "raise questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." It concluded that plaintiff had raised such doubts, and therefore granted a preliminary injunction "in order to maintain the status quo antebellum" during the pendency of BCA's suit.

3

While discovery was still going forward, however, a forest fire—caused by a lightning strike—ravaged the Cement Project area. Several thousand acres of forest were burned, including around ten percent of the planned Cement Timber sale.

The Forest Service subsequently withdrew the Cement Project. It cited, as reasons for its withdrawal, two recent changes. First, the Forest Service issued a new set of regulations in January of 2005, which constituted a "paradigm shift" away from the regulations governing forest planning under which the plan had originally been proposed. The Forest Service suggested that its use of the Black Hills National Forest would be reevaluated under those new regulations. Second, the Forest Service claimed the lightning-caused fire undermined the viability of the proposed timber sale, and so new plans would need to be drawn up to assess the proper course of action.

Based on the Forest Service's representation that the Cement Project had been withdrawn and would not be resuscitated, the district court dismissed plaintiff's cause of action as moot. In so doing, it stated that its determination of mootness was "conditioned upon the government's representation that the Cement Project has been permanently withdrawn and will never be revived. Any new project must begin anew to comply with the mandates of all applicable statutes, including NFMA and NEPA."

After the case was dismissed, BCA moved for attorneys' fees. It argued that it was entitled to attorneys' fees under the EAJA as a "prevailing party" because the order dismissing the case as moot was conditioned upon the government's representation that

the Cement Project had been permanently withdrawn, and because it had prevailed over the government when it obtained a preliminary injunction.

The district court agreed with BCA, and awarded $175,569.24 in attorney's fees. The Forest Service appealed.

## II.

The district court determined that BCA was a prevailing party for two reasons. First, the Forest Service represented that the project had been permanently withdrawn and would never be revived. The district court conditioned its dismissal of the case as moot based on that representation, and found that Plaintiff had thus "prevailed" because it had secured "a binding commitment from the government not only to withdraw the project, but never to revive it." Second, the district court claimed BCA had obtained affirmative relief in the form of a preliminary injunction against the Forest Service, which put a stop to the imminent sale of timber on Forest Service lands.

Neither reason is sufficient to support a finding that BCA is a "prevailing party." We address each in turn.

### A. The Conditional Mootness Order

BCA claims that the district court's conditional mootness order, which rested on its receiving a "binding commitment" from the government not to revive the Cement Project, justifies a finding that it prevailed.

The Supreme Court has clearly spoken on the standards for determining when a litigant should be granted "prevailing party" status. *Buckhannon Board & Care Home,*

5

*Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U. S. 598 (2001).

*Buckhannon* involved a challenge to state law brought by assisted living facilities in West Virginia. The plaintiff there alleged that state codes, which required that residents of assisted living facilities be capable of "self-preservation" in the event of a fire or some other danger, ran afoul of the Fair Housing Amendments Act. *Id.* at 601. While the case was pending, the West Virginia Legislature enacted two bills that eliminated the "self-preservation" requirement, rendering the plaintiff's claim moot. *Id.*

The district court denied the plaintiff's request for attorney's fees, on the grounds that even though plaintiff's suit may have been a catalyst for the West Virginia legislature's actions, the legislative change did not confer prevailing party status upon plaintiff.

The Supreme Court affirmed, explaining that it had found parties prevailed when they obtained enforceable judgments on the merits or court-ordered consent decrees. *Id.* at 604. But "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Id.* at 605. The Court thus held that an award of attorneys' fees was improper when the plaintiff had "simply fil[ed] a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), [and had] reached the 'sought-after destination' without obtaining any judicial relief." *Id.* at 606.

BCA argues that it is a prevailing party under the standard issued by *Buckhannon* because the Forest Service withdrew the Cement Project, and the district judge

6

conditioned his mootness order on the Forest Service's representation that it would not reinstate the project. But while the district judge stated that BCA had obtained a "binding commitment" from the Forest Service not to reinstate the Cement Project, the commitment made by the Forest Service is not sufficient to qualify BCA for prevailing party status.

In finding the case moot, the district court explained: "[T]his determination of mootness is conditioned on the government's representation that the Cement Project has been permanently withdrawn and will never be revived. Any new project must begin anew to comply with the mandates of all applicable statutes." The representation that the government made in withdrawing the project was as follows: "I am withdrawing the [Cement Project] decision notice and I will make a new decision that takes these changed conditions into account after conducting a supplemental environmental assessment. . . . [I]t is clear that whatever management action is selected, it will not be the same as [the Cement Project]."

Certainly, as plaintiff argues, the district judge's mention of the Forest Service's action constitutes a form of judicial recognition. But Buckhannon's requirement that a prevailing party receive some form of judicial imprimatur, *see* 532 U. S. at 605, requires more than a mere judicial statement favoring one party. Instead, in order for a party to prevail, the court's statement must lend judicial teeth to the merits of the case. More

specifically, a party is entitled to attorneys' fees only if it could obtain a court order to enforce the merits of some portion of the claim it made in its suit.

To illustrate this point, consider the position that the plaintiffs in *Buckhannon* would have found themselves in had the state legislature in West Virginia reversed course and reinstated the disputed "self-preservation" rule. Undoubtedly, the plaintiffs in *Buckhannon* would be able to challenge this new rule once again in court. They would not, however, have the right to ask the court to intervene on their behalf and declare that the new rule violated the FHAA. Having won no judgment on the merits in their previous suit, the plaintiffs in *Buckhannon* could at most hope for another chance to present their case on the merits to a court.

This example illustrates why the *Buckhannon* court emphasized the need for judicial *imprimatur*. A judgment on the merits or a court-ordered consent decree indelibly alters the legal landscape between parties. Once such a judgment has been obtained, a party cannot simply change its mind and turn back to its old ways. A party who chose to do so might well be subject to contempt proceedings. Judicial *imprimatur*, of the sort required in *Buckhannon*, gives a plaintiff substance it can rely on in enforcing the merits of its case. That is why it is crucial to prevailing party status.

Here, the district court's order conditionally dismissing the case as moot gives BCA no rights to enforce the merits of the decision. If the Forest Service were to revive the Cement Project, no portion of the district court's order gives the BCA the ability to

enforce the contempt decree. The best BCA could hope is that the district court would withdraw its mootness decision, as that order was "conditioned" on the government's representation. But the withdrawal of that order would not give BCA the right to seek an injunction or a court order blocking reimplementation of the plan. Instead, if the Forest Service reinstated the Cement Project, BCA would get only a chance to address the Forest Service's claims on the merits.

By contrast, a judgment on the merits or a court-ordered consent decree would provide BCA with precisely the ammunition that it currently lacks. Under *Buckhannon*, a court order that favors one party but does not entitle that party to some method of enforcing the merits of the claim is insufficient to qualify that party for attorneys' fees as a "prevailing party." The district court's conditional mootness order thus fails to qualify BCA as a prevailing party.

## B. BCA's Efforts in Obtaining a Preliminary Injunction

BCA also claims its success in obtaining a preliminary injunction should confer upon it prevailing party status.

In *Sole v. Wyner*, 127 S. Ct. 2188, the Court addressed the question of whether a party had prevailed because it succeeded in obtaining a preliminary injunction. The plaintiff there had filed a lawsuit claiming the state's "Bathing Suit" rule, which required all patrons of state parks to wear, at a minimum, a thong and (if female) a bikini top, violated the First Amendment. The plaintiff wanted permission to create artwork in the form of nude bodies arranged into a peace sign on the following day, and so the district

9

judge held a hasty hearing.  The judge found that the Bathing Suit rule was not narrowly

tailored, because the state could put up a barrier to shield beachgoers who did not wish to

see the artwork.  The district judge granted a preliminary injunction allowing plaintiff's

demonstration to go forward, but did not rule on the merits of her First Amendment

claim.

After the peace symbol display took place, however, participants came out from

behind the barrier and went into the water in the nude.  In ruling on the final merits of the

plaintiff's case, the judge found the Bathing Suit rule constitutional, claiming that the

actions of the participants in flouting the barrier during the previous display demonstrated

that the prohibition on nudity was essential to protect the public.  Plaintiff lost, but the

judge nonetheless awarded her attorneys' fees for her success in obtaining a preliminary

injunction.

The Supreme Court reversed.  It held that "[a] plaintiff who achieves a transient

victory at the threshold of an action can gain no award under that fee-shifting provision if,

at the end of the litigation, her initial success is undone and she leaves the courthouse

emptyhanded."  127 S. Ct. at 2192.  However, the Court explicitly refused to address the

question at issue here, stating that it "express[ed] no view on whether, in the absence of a

final decision on the merits of a claim for permanent injunctive relief, success in gaining a

preliminary injunction may sometimes warrant an award of counsel fees."  *Id.* at 2196.

We thus must decide whether BCA's preliminary injunction entitles it to

prevailing party status.  Unlike the injunction in *Sole*, the preliminary injunction here was

10

not undone by a final decision on the merits.  *See id.* at 2196.  It is thus in the area explicitly left open by *Sole.*

"The touchstone of the prevailing party inquiry is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U. S. 782, 792-93 (1989) (emphasis added).  In order for an alteration of legal relationships to be considered material, however, a plaintiff must "receive at least some relief *on the merits of his claim.*"  *Hewitt* v. *Helms*, 482 U. S. 755, 760 (1987) (emphasis added).  *See also Sole*, 127 S. Ct. at 2194.

In concert with these cases, the Tenth Circuit has held that a preliminary injunction that achieves the full relief on the merits sought by the suit justifies prevailing party status.  In *Dahlem v. Board of Education of Denver Public Schools*, 901 F. 2d 1508 (10th Cir. 1990), the Tenth Circuit conferred prevailing party status on a student who obtained a preliminary injunction allowing him to participate in gymnastics classes at his high school.  The case was mooted by plaintiff's graduation, but because the preliminary injunction awarded plaintiff precisely the relief he sought on the merits, the Tenth Circuit deemed plaintiff a "prevailing party."

While *Sole* explicitly declined to decide the question in that case, its reasoning sheds some light on our case.  In *Sole*, the Court explained that although the petitioner received preliminary relief allowing her to engage in protected conduct on one occasion, that relief did not make her a prevailing party because she failed to achieve the final relief

11

she sought: a determination that "the state law banning nudity in parks was unconstitutional as applied to expressive, nonerotic nudity." *Sole*, 127 S. Ct. at 2196. By contrast, in *Dahlem*, the final relief plaintiff sought—being able to participate in gymnastics classes for the duration of his high school career—was precisely what he gained via preliminary injunction.

We need not decide whether *Dahlem* survives *Buckhannon* and *Sole*. But given the requirements set forth by the Supreme Court in recent years, if *Dahlem* is still good law, it at best stands for the proposition that a preliminary injunction cannot serve as the basis for attorneys' fees if it does not meet the stringent standards set forth in *Texas State Teachers Association* and *Hewitt*: A preliminary injunction that does not provide a plaintiff with relief on the merits of her claim cannot serve as the basis for prevailing party status.

BCA fails to meet this standard. Here, the district judge's preliminary injunction required the Forest Service to refrain from going forward with the Cement Project, and "from taking actions such as constructing or reconstructing new roads and/or . . . selling or awarding such timber by contract." The injunction did not prevent the Forest Service from continuing to meet and plan in regards to the Cement Project.

Nor did the preliminary injunction grant the relief that BCA sought. BCA sought a determination that the Cement Project was issued in violation of NEPA, NFMA, and the APA. But no portion of the district court's order issuing the injunction addressed whether the Cement Project was arbitrary and capricious.

12

Instead, it granted preliminary relief in part because "the equities of [potential species loss] tip[ped] heavily towards the movant."  The relief BCA obtained in the preliminary injunction was not the relief it sought in its complaint.  It won the right to have the status quo preserved, so that had it prevailed on the merits, its victory would have meaning.  The preliminary injunction thus did not serve to make BCA a "prevailing party."

## III.

Because plaintiff is not a "prevailing party," we need not address the Forest Service's other arguments.  We **REVERSE** the award of attorneys' fees to plaintiff and **REMAND** for proceedings consistent with this opinion.

13