FILED
United States Court of Appeals
Tenth Circuit

March 18, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ABBAS HANOUN AL-MALEKI,

      Plaintiff - Appellee,

v.

ERIC H. HOLDER, JR.,[*] Attorney General;
JANET NAPOLITANO,[**] Secretary of
Department of Homeland Security;
ALFONSO AGUILAR, Chief of Office of
Citizenship; ROBERT S. MUELLER, III,
Director of Federal Bureau of Investigation,

      Defendants - Appellants.

No. 07-4260

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:07-CV-96-BSJ)**

---

Walter Manning Evans (Emily Anne Radford, Assistant Director, and Stephen M.
Elliott, Trial Attorney, on the briefs), Office of Immigration Litigation, United
States Department of Justice, Civil Division, Washington, D.C., for Defendants-
Appellants.

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr., is substituted for
Michael B. Mukasey as United States Attorney General, effective February 3,
2009.

[**]Pursuant to Fed. R. App. P. 43(c)(2), Janet Napolitano is substituted for
Michael Chertoff as Secretary of Department of Homeland Security, effective
January 21, 2009.

Eric A. Shumsky, Sidley Austin LLP, Washington, D.C. (J. Shawn Foster, Law Offices of J. Shawn Foster, LLC, Salt Lake City, Utah; Madeleine V. Findley, Sidley Austin LLP, Washington, D.C.; and Tacy F. Flint, Sidley Austin LLP, Chicago, IL, with him on the brief), for Plaintiff-Appellee.

---

Before **HENRY,** Chief Judge, **TACHA**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    Introduction

In early 2006, Abbas Hanoun Al-Maleki, the appellee in this matter, filed an application for naturalization with United States Citizenship and Immigration Services ("USCIS"). USCIS conducted an interview with Al-Maleki in August 2006, but did not adjudicate his naturalization application within 120 days as required by statute. *See* 8 U.S.C. § 1447(b). Al-Maleki filed an action in federal court pursuant to 8 U.S.C. § 1447(b) which was resolved by the entry of an order instructing USCIS to administer the oath of citizenship on July 18, 2007. Al-Maleki then filed a motion seeking attorneys' fees under the Equal Access to Justice Act ("EAJA"). *See* 28 U.S.C. § 2412. The district court granted the motion, concluding Al-Maleki was the prevailing party and the Government's actions were not substantially justified. On appeal, the Government challenges the district court's conclusions and argues Al-Maleki is not entitled to attorneys' fees. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm**.

## II.    Background

Al-Maleki filed an application for naturalization with USCIS on February 21, 2006. USCIS filed a name check request[1] with the FBI which was received by the FBI on March 8, 2006. Al-Maleki was interviewed by USCIS on May 26, 2006, and again on August 2, 2006. At the conclusion of the August 2006 interview, he was informed he passed both the English and history examinations but his application could not be processed to finality until the FBI name check was complete. USCIS concedes it did not adjudicate Al-Maleki's application within 120 days of either the May 2006 or the August 2006 interview.

Al-Maleki attempted to resolve the inaction on his application through correspondence with USCIS. When that approach proved unsuccessful, Al-Maleki filed a petition in federal district court pursuant to 8 U.S.C. § 1447(b). In the February 2007 petition, he sought a judgment that he was entitled to naturalization or, in the alternative, an order remanding the matter to USCIS with instructions to adjudicate his application within fifteen days. The Government responded on April 23, 2007, by filing a motion seeking an unrestricted remand to USCIS "for the purpose of adjudicating [Al-Maleki's] naturalization application and scheduling a naturalization proceeding when the application is approved." The motion effectively sought to deny all relief under 8 U.S.C. § 1447(b). In its

---

[1]The FBI's Name Check Program was established to disseminate background information from the FBI's Central Records System to requesting agencies.

memorandum in support of its motion, the Government informed the court that Al-Maleki's name check was still pending with the FBI.

The Government's motion was denied after a hearing. The district court ordered the Government to file a detailed answer to Al-Maleki's petition. In the answer, filed on June 29, 2007, USCIS represented to the court that it had filed a request with the FBI to expedite Al-Maleki's name check and the FBI completed the check on June 1, 2007. USCIS further represented that approval of Al-Maleki's naturalization application was "likely" and a naturalization ceremony could be scheduled soon. The parties thereafter filed a joint motion for remand, requesting the district court to remand the matter to USCIS "with instructions to . . . administer the oath of citizenship to [Al-Maleki] by July 18, 2007." The court granted the motion and entered an order which stated as follows:

> Pursuant to 8 U.S.C. § 1447(b), this case is remanded to the U.S. Citizenship and Immigration Services ("USCIS") with instructions to USCIS to administer the oath of citizenship to Plaintiff by July 18, 2007, for the reasons set out in the stipulation and joint motion.

Less than two weeks after he was naturalized, Al-Maleki filed a motion seeking attorneys' fees pursuant to the EAJA. The district court granted the motion, concluding (1) Al-Maleki was the prevailing party in the 8 U.S.C. § 1447(b) matter and (2) the Government failed to show the underlying agency actions and its litigation position were substantially justified. The Government challenges both of those conclusions in this appeal.

-4-

## III.    Discussion

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  The district court's conclusion that Al-Maleki is a prevailing party is a legal question this court reviews de novo.  *See Browder v. City of Moab*, 427 F.3d 717, 721 (10th Cir. 2005).  The determination that the Government's position was not substantially justified is reviewed for abuse of discretion.  *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995).

*A.    Prevailing Party Determination*

Our evaluation of the Government's argument that Al-Maleki was not the prevailing party in the § 1447(b) action is guided by the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*,  532 U.S. 598 (2001), and this court's interpretation of that decision.  *See Biodiversity Conservation Alliance v. Stem*, 519 F.3d 1226 (10th Cir. 2008) (O'Connor, J.).  The plaintiff in *Buckhannon* was a care facility challenging a state statute requiring that residents of boarding homes be capable of "self-preservation" on the grounds that the statute violated the Fair Housing Amendments Act.  *Buckhannon*, 532 U.S. at 600-01.  Buckhannon sought declaratory and injunctive relief against the state of West Virginia.  *Id*.  While the

suit was pending, the West Virginia legislature amended the statute to eliminate the disputed requirement and the district court dismissed Buckhannon's action as moot. *Id*. at 601. Buckhannon then filed a motion seeking attorneys' fees, arguing it was the prevailing party because its lawsuit was the impetus for the statutory change. *Id*. The Supreme Court affirmed the denial of fees, holding the term "prevailing party" is a legal term of art that does not "include[] a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id*. at 600. The Court ruled Buckhannon was not a prevailing party because its lawsuit did not result in a "*judicially sanctioned* change in the legal relationship of the parties." *Id*. at 605 (emphasis added).

This court applied the *Buckhannon* standard in *Biodiversity Conservation Alliance v. Stem*, relying on the Court's emphasis on "judicial imprimatur" to support the conclusion that "a party is entitled to attorneys' fees only if it could obtain a court order to enforce the merits of some portion of the claim it made in its suit." *Biodiversity*, 519 F.3d at 1230. We held the preliminary injunction obtained by the plaintiff in *Biodiversity* did not satisfied that standard because it did not grant the plaintiff any of the relief sought in its complaint. *Id*. at 1232 (reasoning plaintiff won only "the right to have the status quo preserved, so that had it prevailed on the merits, its victory would have meaning").

-6-

The Government asserts that under *Buckhannon*, Al-Maleki is not the prevailing party because USCIS acted voluntarily when it naturalized him. According to the Government, the change in the parties' legal relationship occurred when USCIS, in the ordinary course of performing its statutory duties, voluntarily processed Al-Maleki's naturalization application and reached a favorable determination. Thus, the Government argues, the district court's grant of the motion to remand did not effect the required material alteration in the parties' legal relationship and the lawsuit was merely a catalyst for USCIS's voluntary actions.

The Government's argument that Al-Maleki's lawsuit was only a catalyst for USCIS's voluntary actions is unavailing. Even if § 1447(b) can be interpreted in a way that effectively permits USCIS to divest a federal district court of jurisdiction over a naturalization application by taking final action on the application after the filing of a federal suit but before the district court issues a ruling,[2] that is not the situation before us. Instead, the district court resolved the

---

[2]The Government argues at length that the district court and USCIS possessed concurrent jurisdiction over Al-Maleki's naturalization application and USCIS's voluntary actions effectively negated the district court's power to grant the application or enforce USCIS's decision to naturalize Al-Maleki. Contrary to the Government's argument, both the Ninth and Fourth Circuits have held that 8 U.S.C. § 1447(b) grants the federal district courts exclusive jurisdiction over naturalization applications once a federal petition is filed. *Etape v. Chertoff*, 497 F.3d 379, 383-87 (4th Cir. 2007); *United States v. Hovsepian*, 359 F.3d 1144, 1159 (9th Cir. 2004). The persuasive reasoning of the Ninth and Fourth Circuits casts serious doubt on the Government's concurrent jurisdiction argument. It is

(continued...)

litigation *before* USCIS could voluntarily naturalize Al-Maleki. Thus, the Government's argument fails to acknowledge the most vital fact, *i.e.*, at the time the district court's order was entered, USCIS had not yet naturalized Al-Maleki or made a binding commitment to do so. While USCIS may have continued with some unspecified processing activities after Al-Maleki filed his lawsuit,[3] it did not complete the naturalization process until after it was ordered to do so by the district court. Admittedly, on July 16, 2007, USCIS represented to the district court that (1) it completed processing and approved Al-Maleki's application and (2) Al-Maleki was scheduled to take the oath of citizenship on July 18, 2007. These representations, however, did nothing to materially change the legal relationship of the parties or moot Al-Maleki's § 1447(b) action. USCIS made no enforceable commitment to naturalize Al-Maleki and it has not identified any recourse Al-Maleki could obtain under any potentially applicable law if it failed to administer the oath as promised.

---

[2](...continued)
unnecessary to address the argument here, however, because Al-Maleki was a prevailing party even if we assume USCIS retained concurrent jurisdiction over his application.

[3]The record does not indicate what processing activities, if any, may have been conducted after Al-Maleki filed his lawsuit. The Government's failure to detail the steps USCIS took after requesting the name check from the FBI indicates USCIS was not actively processing Al-Maleki's application but was merely waiting for the name check results. There is certainly no evidence that it was active in the sense of requesting expedition of the name check before filing its April 23, 2007, motion for unrestricted remand to USCIS.

Further, the order entered by the district court did not "merely recognize[] the fact of the parties' agreement and dismiss[] the case because there [was] no longer a dispute before [the court]."[4] *Bell v. Bd of County Comm'rs of Jefferson County*, 451 F.3d 1097, 1103 (10th Cir. 2006) (quotation omitted). To the contrary, it granted Al-Maleki substantive relief on the merits of the claims raised in his § 1447(b) action. *See Biodiversity*, 519 F.3d at 1231. On the basis of the parties' stipulations, the district court resolved Al-Maleki's claims in his favor, concluding he was entitled to be naturalized and ordering USCIS to administer the oath on a date certain. The order, therefore, also provided the judicial imprimatur which is indispensable to the prevailing party determination. The order placed the weight of judicial authority behind USCIS's stipulation that Al-Maleki was

[4]The Government relies on *Bell v. Board of County Commissioners of Jefferson County*, for the proposition that the district court's order merely memorialized the parties' voluntary agreement. 451 F.3d 1097, 1102-03 (10th Cir. 2006). Such reliance is misplaced. In *Bell*, the plaintiff reached a settlement with the defendant while his appeal was pending in this court. *Id.* at 1101, 1104. The parties then submitted a stipulation of dismissal which resulted in the clerk merely dismissing the appeal "without judicial action." *Id.* at 1104 (quotation omitted). This court concluded the dismissal order did not confer prevailing party status on the plaintiff because the parties' settlement "was neither approved by this court nor implemented in a consent decree or equivalent order." *Id.* Contrary to the Government's arguments, the situation in *Bell* is not analogous to the situation here. *Bell* involved the question of whether the parties' settlement agreement was analogous to a consent degree. *Id.* at 1103. Al-Maleki did not proceed in district court under the theory that the court's ruling in the § 1447(b) action was a consent decree. He has consistently asserted he is the prevailing party because he obtained a judgment on the merits, and we agree. In light of our conclusion that the district court's order is a judgment on the merits, it is unnecessary to address the Government's argument that its agreement with Al-Maleki does not meet the requirements of a court-ordered consent decree.

entitled to be naturalized by imposing a *judicially enforceable* obligation on USCIS to naturalize Al-Maleki by a date certain. If USCIS failed to comply with the order, Al-Maleki could petition for relief in district court. *See Biodiversity*, 519 F.3d at 1230 (explaining that once a judgment has been obtained, a party who "turn[s] back to its old ways . . . might well be subject to contempt proceedings"). Entry of the order, not USCIS's stipulation, was the action which "indelibly alter[ed] the legal landscape between" USCIS and Al-Maleki. *Biodiversity*, 519 F.3d at 1230 ("[A] party is entitled to attorneys' fees only if it could obtain a court order to enforce the merits of some portion of the claim it made in its suit."). Thus, the Government cannot prevail on its assertion Al-Maleki is not a prevailing party either because his lawsuit was simply a catalyst for USCIS's voluntary actions or because the court's order merely memorialized the parties' voluntary agreement. The order is a judgment on the merits that conferred prevailing party status upon Al-Maleki.[5]

---

[5]Our holding is not at odds with the approach taken by the First Circuit in *Smith v. Fitchburg Public Schools*, 401 F.3d 16 (1st Cir. 2005). The *Smith* court held the plaintiff was not a prevailing party because the orders of a BSEA hearing officer did not "provide the necessary judicial imprimatur on the change in the legal relationship between the parties." *Id*. at 23. In contrast to the order entered by the district court in Al-Maleki's case, the orders in *Smith* did not resolve the plaintiff's claim that she was entitled to receive "home/hospital education services." *Id*. at 19 (quotation omitted). Instead, that determination was made by the defendant after it voluntarily conducted an IEP meeting. *Id*. The subsequent orders entered by the hearing officer, some accompanied by the threat of sanctions, involved the defendants failure to proceed expeditiously. *Id*. at 26-27. The orders did not grant the plaintiff any legally enforceable, substantive relief on

(continued...)

-10-

*B.      Substantial Justification*

Our conclusion that Al-Maleki is the prevailing party in the § 1447(b) proceeding does not automatically entitle him to recover his attorneys' fees. The EAJA specifically provides that a court should not award fees to a prevailing party if it "finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Here, the Government challenges the district court's conclusion that its position was not substantially justified, a conclusion we must affirm unless the court abused its discretion. *Gilbert*, 45 F.3d at 1394.

The "position of the United States" is defined in the EAJA as "the position taken by the United States in the civil action [and] the action or failure to act by the agency upon which the civil action is based." *Id*. at § 2412(d)(2)D). Thus, USCIS's prelitigation actions and the Government's litigation position are both relevant to the inquiry and both must be reasonable in fact and law. *Hackett v. Barnhart*, 475 F.3d 1166, 1174 (10th Cir. 2007) ("EAJA fees generally should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position" (quotation omitted)). The Government need not demonstrate its position was correct, but it bears the burden

---

[5](...continued)
the merits of her claims. *Id*. at 27.

of establishing its position was "justified to a degree that could satisfy a reasonable person." *Id.* at 1172 (quotation omitted).

Before beginning our analysis, it is necessary to summarize the naturalization process generally and the specific actions of USCIS which precipitated Al-Maleki's § 1447(b) suit. Typically, the naturalization process begins when an alien files a written, sworn application with the Department of Homeland Security.[6] 8 U.S.C. § 1445(a). With limited exceptions not relevant here, the Government may not naturalize an alien until it has conducted a "personal investigation." 8 U.S.C. § 1446(a). The applicant must appear in person for an initial examination, which includes questioning about the applicant's written submissions and administration of English literacy and civics tests. 8 C.F.R. § 335.2(a), 335.2(c). Pursuant to regulation, USCIS may conduct the examination of the applicant "only after [it] has received a definitive response from the [FBI] that a full criminal background check . . . has been completed." 8 C.F.R. § 335.2(b). Once the examination has been held, USCIS must act within 120 days to either grant or deny the naturalization application. 8 U.S.C. § 1447(b); 8 C.F.R. § 335.3(a) ("A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of

---

[6]The naturalization functions of the former Immigration and Naturalization Service were transferred to the Department of Homeland Security on March 1, 2003. Homeland Security Act of 2002, Pub. L. 107-296, § 402, 116 Stat. 2135, 2178 (2002).

the initial examination . . .").  If the application is granted, USCIS administers an oath of allegiance to the applicant in a public ceremony.  8 U.S.C. § 1448(a); 8 C.F.R. § 337.1(a).  The oath of allegiance is a prerequisite to obtaining citizenship.  8 U.S.C. § 1448(a).

The Government concedes USCIS did not adjudicate Al-Maleki's naturalization application within 120 days as required by statute.  It argues USCIS's prelitigation conduct was nonetheless reasonable in both law and fact because USCIS was precluded by 8 U.S.C. § 1446(a) from proceeding with Al-Maleki's application until the FBI name check was complete and the FBI was unable to act on the name check request within 120 days due to a "tremendous backlog of naturalization cases."  *See* 8 U.S.C. § 1446(a) ("Before a person may be naturalized, . . . [USCIS] . . . shall conduct a personal investigation of the person applying for naturalization . . . .").  Relying on a provision in the 1998 Appropriations Act, the Government further argues USCIS was prohibited from using agency funds to adjudicate Al-Maleki's naturalization application until the name check was complete.  *See* Dep'ts of Commerce, Justice, & State, the Judiciary, & Related Agencies Appropriations Act, 1998, Pub. L. 105-119, 111 Stat. 2440, 2448-49 (1997) (stating that funds appropriated to USCIS may not be "used to complete adjudication of an application for naturalization unless [USCIS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed.").  According to the

Government, it demonstrated that USCIS was unable to adjudicate Al-Maleki's application within the 120-day period and the district court abused its discretion by failing to credit its argument to that effect.

Al-Maleki does not dispute the Government's explanation that the lengthy delay in receiving the results of the FBI name check caused USCIS to miss the 120-day deadline for adjudicating his naturalization application. He challenges, however, any suggestion by the Government that an FBI name check is a congressionally mandated component of the criminal background investigation required by either 8 U.S.C. § 1446(a) or the 1998 Appropriations Act. Neither, he argues, is the name check mandated by regulation. *See* 8 C.F.R. § 335.1 ("The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application."); 8 C.F.R. § 335.2(b) (employing the term "full criminal background check" but not referencing the FBI name check process). Thus, he challenges the legal reasonableness of preconditioning the adjudication of his application on the receipt of the results of the name check. Even conceding the name check was required, Al-Maleki further argues USCIS's prelitigation position was not reasonable in law and fact because USCIS created the Gordian knot in which it found itself by conducting his examination *before* receiving the results of the

-14-

name check, in violation of USCIS's own regulation. *See* 8 C.F.R. § 335.2(b) (providing USCIS may conduct the initial examination "only after [it] has received a definitive response from the [FBI] that a full criminal background check . . . has been completed."). Finally, he argues this court should reject the Government's reliance on the FBI's name check backlog as insufficient to show substantial justification because USCIS could have complied with the 120-day requirement by requesting the FBI to expedite his name check.

It is unnecessary to address many of the arguments advanced by the parties because the district court's ruling on the reasonableness of USCIS's prelitigation actions can be affirmed even if we assume all the disputed underlying issues should be resolved in the Government's favor. Thus, we will first assume an FBI name check is an essential component of USCIS's congressionally mandated duty to conduct a personal investigation of an applicant. We will further assume USCIS was precluded by law from finally adjudicating Al-Maleki's application until the name check was completed and that USCIS can rely on the backlog of another agency to justify its actions. Finally, we will ignore the uncontroverted fact that USCIS violated its own regulations by conducting Al-Maleki's initial examination before the comprehensive background investigation was completed, thereby setting the stage for USCIS's asserted inability to adjudicate the

application within the 120-day period.[7]  Instead, we focus on the actions USCIS

took after the 120-day period expired.

Al-Maleki's name check request was received by the FBI on March 8,

2006.  When his name was electronically checked against the FBI's Universal

Index, it matched a name in an FBI record.  The FBI conducted a secondary

manual search which did not resolve the name-match issue.  Pursuant to FBI

protocol, Al-Maleki's name check application was then submitted for additional

file reviews.  According to Michael Cannon, the Section Chief of the National

Name Check Program Section at the FBI, the additional file review process is

"time consuming and labor intensive."  Cannon stated that USCIS has

"specifically" instructed the FBI to process USCIS name checks "on a first-in,

first-out basis unless USCIS directs that a name check be expedited."  The record

also reveals, however, that "USCIS may pay the FBI double to 'expedite' up to a

few hundred FBI name checks per month."  DHS Office of the Inspector General,

*A Review of U.S. Citizenship and Immigrations Services' Alien Security Checks*,

OIG-06-06, 24 (2005); *see also* FBI Records Mgmt. Div. Nat'l Name Check

---

[7]Although not argued by the Government, it is far from clear that USCIS's violation of 8 C.F.R. § 335.2(b) is relevant to the substantial justification inquiry. The EAJA focuses on "the action or failure to act by the agency upon which the civil action is based."  28 U.S.C. § 2412(d)(2)(D).  Al-Maleki's § 1447(b) claim did not accrue until the expiration of the 120-day period.  A legitimate argument could be made that Al-Maleki's civil action was not based in whole or in part on any actions taken by USCIS before the expiration of the 120-day period.  Thus, the agency's failure to comply with the regulation, which occurred at the beginning of the 120-day period, is arguably irrelevant.

Program Section User Fees, 73 Fed. Reg. 55794, 55798 (Sept. 26, 2008) (stating the fee to process an expedited name check request during the relevant time period was $22.65). USCIS, however, "restricts [those] requests to certain cases, such as when the alien is about to become ineligible due to age, the applicant files writ of mandamus lawsuits to compel USCIS to complete adjudication, or other humanitarian factors." *Id*. at 24-25.

Vicky Waller, the Acting Field Director for the USCIS office which processed Al-Maleki's application, stated that her office monitors the status of outstanding background checks on a weekly basis. Further, the record demonstrates that Al-Maleki attempted to resolve his outstanding naturalization application by corresponding informally with USCIS before filing his § 1447(b) action. Thus, despite being aware, either through their own monitoring of outstanding background checks or as a result of Al-Maleki's correspondence, that Al-Maleki's application was still pending after the expiration of the 120-day period, USCIS did not request the FBI to expedite his name check. Because the Government has offered no evidence to the contrary, we can assume the request to expedite Al-Maleki's name check was made only after his § 1447(b) action was filed, consistent with USCIS policy. *See id*. at 24. The Government has also not demonstrated that it was unable to expedite Al-Maleki's name check request until after he commenced his § 1447(b) action.

The uncontroverted evidence that USCIS had the ability to direct the FBI to expedite Al-Maleki's name check and USCIS's admission that the name check was completed promptly once an expedition request was finally made, fatally undermine the Government's assertion that it was *unable* to process Al-Maleki's application because of the FBI backlog. Thus, USCIS's prelitigation actions were not reasonable in fact. Because USCIS has not offered any other justification for its prelitigation actions,[8] the district court's conclusion that those actions were not substantially justified was not an abuse of discretion.

The Government also challenges the district court's conclusion that its litigation position was not substantially justified. It references three actions it took after Al-Maleki filed his § 1447(b) complaint, but Al-Maleki challenges only one of them as unreasonable. Pursuant to 8 U.S.C. § 1447(b), once a petition is

---

[8]The Government argues the FBI acted reasonably by processing name requests on a first-in, first-out basis. It asserts "[t]he FBI conducts investigations roughly in the order of receipt" as a way to "fairly prioritize name check requests." It then attempts to deflect accountability for the name check delay to the FBI by arguing USCIS's "position did not display unreasonableness simply because the FBI did not move [Al-Maleki's] background investigation to the 'front of the line.'" This court, however, is evaluating the reasonableness of USCIS's actions, not the actions of the FBI. Further, in light of Cannon's statement that the FBI processes name checks in an order "specifically" directed by USCIS, the Government's attempt to place sole responsibility for the delay in processing Al-Maleki's name check on the FBI is, at best, disingenuous. The Government also argues that requests for expedited name checks exacerbate the backlog issue because FBI employees must take time away from their "normal name check responsibilities" when they receive an expedited name check request, thereby perpetuating the problem "in other cases." The Government's argument is unsupported by any record evidence.

filed, the district court has the power to (1) adjudicate the naturalization application or (2) remand the matter to USCIS "with appropriate instructions." Immediately after Al-Maleki filed his petition, the Government filed a motion seeking a remand to USCIS. It requested relief in the form of an order either (1) remanding the matter to USCIS "for final adjudication" or (2) staying the § 1447(b) action pending the completion of the comprehensive background check. The district court denied the motion and ordered the Government to file a detailed answer to the petition.

The Government argues the motion to remand constituted a reasonable litigation position because USCIS has the expertise to adjudicate naturalization applications and its motion sought to return the matter to USCIS to complete the naturalization adjudication within a reasonable time period. As Al-Maleki correctly points out, however, the Government's motion, if granted, would have wholly nullified the 120-day statutory deadline. The motion conceded the statutory violation but essentially sought complete dismissal of Al-Maleki's § 1447(b) action and permission from the district court to adjudicate Al-Maleki's application without *any* time constraints or judicial oversight. The motion did not even suggest the Government had, by then, requested the FBI to expedite Al-Maleki's name check. Even accepting the Government's argument that USCIS's expertise at adjudicating naturalization applications is superior to that of the district courts, such a motion is not reasonable in law and fact. Accordingly, the

district court did not abuse its discretion in concluding the Government's litigation position was not substantially justified.

## IV.  Conclusion

The judgment of the district court awarding attorneys' fees to Al-Maleki under the EAJA is *affirmed*.