**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ERIC VERLO; JANET MATZEN;
FULLY INFORMED JURY
ASSOCIATION,

      Plaintiffs - Appellees,

v.

THE CITY AND COUNTY OF DENVER,

      Defendant - Appellant,

and

CHIEF JUDGE MICHAEL MARTINEZ,
in his official capacity as Chief Judge of
the Second Judicial District,

      Defendant.

No. 18-1304
(D.C. No. 1:15-CV-01775-WJM-MJW)
(D. Col.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **EID**, Circuit Judges.
_____

_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendant-Appellant the City and County of Denver (Denver) appeals the district court's award of attorneys' fees to the prevailing party, Plaintiffs-Appellees Eric Verlo, Janet Matzen, and Fully Informed Jury Association (Verlo), pursuant to 42 U.S.C. § 1988. We affirm the judgment of the district court.

I

This case has a long procedural history and has been before this court twice before. See Verlo v. Martinez (Verlo I), 820 F.3d 1113 (10th Cir. 2016) and (Verlo II), 741 F. App'x 534 (10th Cir. 2018). We set forth here only those facts relevant to the issue currently on appeal: whether Verlo is a prevailing party, entitled to attorneys' fees pursuant to § 1988.

The action underlying the fee award is a First Amendment challenge, seeking to protect the distribution of jury nullification literature outside of the Lindsey-Flanigan Courthouse in Denver, Colorado. Verlo sued Denver and Chief Judge Michael Martinez, in his official capacity as Chief Judge of the Second Judicial District (Second Judicial District). The suit challenged the "Plaza Order," which broadly prohibited First Amendment activities in the Plaza of the Courthouse. Aplt. App., Vol. I at 56–58.

Shortly after Verlo sued, before the evidentiary hearing for a preliminary injunction, Verlo and Denver submitted a joint Stipulation.[1] The Stipulation

---

[1] The entire text of the Stipulation is reproduced below:

1. The Lindsey-Flanigan plaza ("Plaza"), which is located between the

2

(1) identified the Plaza as a public forum, (2) provided that Denver would not arrest

Verlo for distributing jury nullification literature, so long as Verlo complied with

other applicable laws, (3) stopped Denver from enforcing the Plaza Order as written,

Van Cise Simonet Detention Center and the Lindsey-Flanigan courthouse is a public forum and any content-based regulations must be narrowly drawn to effectuate a compelling state interest and reasonable time, place and manner regulations.

2. Plaintiffs who wish to engage in peacefully passing out jury nullification literature to passersby on the Plaza are entitled to do so and that Denver, through its police or sheriff department, will not arrest or otherwise charge Plaintiffs for handing out literature regarding jury nullification so long as Plaintiffs do not violate Colorado law or Denver's Revised Municipal Code when they are handing out their literature. The parties stipulate that Plaintiffs' proposed intent of peacefully handing out jury nullification literature to or discussing jury nullification with passersby at the Plaza, without more, does not violate Colorado law. Plaintiffs acknowledge that their right to hand out literature regarding jury nullification is also subject to compliance with any other applicable law.

3. Through this Stipulation, Denver is not waiving its right to impose content and viewpoint neutral reasonable time, place and manner restrictions on the use of the Plaza or to charge or arrest one or more of the Plaintiffs if probable cause exists to believe that their conduct violates the law.

4. On August 14, 2014, Denver District Court Chief Judge Michael Martinez entered an Order banning all speech activities from the courthouse plaza and the areas surrounding the courthouse. Denver stipulates that it does not intend to enforce the August 14, 2015 Order as written and will only impose content and viewpoint neutral reasonable time, place and manner restrictions on the use of the Plaza, and/or other exterior areas surrounding the Plaza if Denver determines that a compelling need exists to do so.

5. The parties agree to this Stipulation being entered as an order of the Court.

Aplt. App., Vol. I at 71–72.

3

and (4) noted that the parties agreed to the Stipulation being entered as an order of the district court. Id. at 71–72.

Next, after the evidentiary hearing, the district court entered a preliminary injunction in favor of Verlo. Verlo I, 820 F.3d at 1123. The district court's decision granting the preliminary injunction partly relied on Denver's Stipulation, and stated that the Stipulation was "ACCEPTED and shall be treated as if an order from this Court." Aplt. App., Vol. II at 110. Only the Second Judicial District appealed the preliminary injunction. Verlo I, 830 F.3d at 1124.

While that appeal was pending, Denver moved to dismiss the claims against it in the district court. Aplt. App., Vol. II at 289–304. Denver argued that, in light of the Stipulation, Verlo lacked standing to pursue their claims against Denver because Verlo could not "establish any real and immediate threat that they will be arrested or prosecuted by Denver merely for distributing the jury nullification literature." Id. at 293 (quotation marks omitted). Denver argued that the Stipulation "provide[d] the precise remedy Plaintiffs s[ought] in the permanent injunction," thereby mooting the claims against Denver. Id. at 294. The district court granted Denver's motion to dismiss, concluding that Verlo did not have standing to pursue their claims against Denver because the Stipulation removed any chance that Denver would enforce the Plaza Order. Id. at 342–43.

In its ruling, the district court "adopt[ed] the Stipulation" and "contemporaneously entered it as an Order of th[e] Court," adding that "[t]he Stipulation is now, therefore, effectively a permanent injunction." Id. at 342. The district court entered the "Order Adopting Stipulation" the same day it granted Denver's motion to dismiss. Id. at 344–45.

4

The Order Adopting Stipulation included the first four paragraphs of the Stipulation and

added the following statement: "The Court retains jurisdiction over this action as well as

the parties to the Stipulation, in order to enforce the terms of this Order." Id. Denver did

not challenge the Order Adopting Stipulation.

With Denver out of the case, the litigation against the Second Judicial District

proceeded to a bench trial. Before that trial, the parties submitted a joint status report,

describing an agreement between Denver and the Second Judicial District.[2] Aplt. App.,

Vol. IV at 472–78. In light of the agreement between Denver and the Second Judicial

District, the district court ordered Denver to show cause why it should not be reinstated

as a defendant. Id. at 483. Denver argued that reinstatement was unnecessary in part

because:

> there is no need to consider whether a permanent injunction should be
> issued against Denver because Denver has confirmed, via Paragraph 4 of
> the Stipulation, that it will not enforce [the Plaza Order] as written.
> Consequently, there is no conduct which remains to be enjoined through the
> issuance of a permanent injunction and there is no legal or practical reason
> to include Denver on a permanent injunction order which prohibits
> enforcement of [the Plaza Order].

Id. at 491. Verlo did not respond, and the district court "deem[ed] it conceded that [it]

---

[2] The agreement is attached as Exhibit 1 to the joint status report. The
agreement, titled "Memorandum of Understanding," generally lists the roles and
responsibilities Denver and the Second Judicial District each have to the Lindsay-
Flanigan courthouse including its Plaza, under their "collaborative authority." Aplt.
App., Vol. IV at 475, 479. The status report further states "Denver has decided to de-
designate" a portion of the Plaza, but that decision "is not intended to alter the
Stipulation." Id. at 476. The report is signed by counsel for Verlo and the Second
Judicial District, but Denver's counsel is also listed under "respectfully submitted."
Id. at 478.

5

need not . . . reinstate [Denver]," and discharged its show cause order. Id. at 501.

The district court subsequently conducted a two-day bench trial on the merits of the claims remaining between Verlo and the Second Judicial District and held that the Preliminary Injunction should be dissolved. Id., Vol. VIII at 1100. The district court concluded that Denver and the Second Judicial District could each separately impose restrictions on the Plaza. Id. at 1111 ("Denver is the landowner, but the Second Judicial District is a tenant with inherent authority to issue orders for preservation of security and decorum."). Thus, as stated in the Stipulation, the Plaza "remains a designated public forum as it relates to Denver's ability to impose restrictions on the property." Id. at 1111–12 (emphasis in original). But, as to the Second Judicial District, the district court concluded the claims failed. The district court thus dissolved the preliminary injunction and entered judgment in favor of the Second Judicial District.

Subsequent to the district court's entry of judgment in favor of the Second Judicial District, Verlo moved under 42 U.S.C. § 1988 to recover their attorneys' fees and costs for the entire litigation from both Denver and the Second Judicial District. The district court granted the motion only in part, concluding that Verlo had prevailed against Denver because "[t]he Stipulation, entered as a Court order, remains binding to this day, and the [district court] has contempt jurisdiction to enforce it." Id., Vol. VIII at 1333.

The district court awarded attorneys' fees against Denver through the date on which the parties had entered the Stipulation. The parties stipulated to the amount of

6

the fee award, and the district court accepted and entered their stipulation. Denver timely appealed.

## II

"In any action or proceeding" brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The issue of which party prevailed – the only issue presented on appeal – is a question of law we review de novo. See Lorillard Tobacco Co. v. Engida, 611 F.3d 1209, 1214 (10th Cir. 2010).

"[A] plaintiff 'prevails'" for purposes of § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111–12 (1992). Relief on the merits occurs when plaintiffs "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quotations omitted) (abrogated in part by statute in the context of prisoner litigation). And a material alteration of the parties' legal relationship occurs when there is "judicial imprimatur on the change." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001). The requisite judicial imprimatur can be in the form of an enforceable judgment on the merits, a court-ordered consent decree, id. at 604, or a judicially enforceable settlement, see Farrar, 506 U.S. at 111 ("The plaintiff must obtain an enforceable judgment against

7

the defendant from whom fees are sought or comparable relief through a consent decree or settlement.") (citations omitted).

"A court's '[m]ere involvement in the settlement . . . is not enough. There must be some official judicial approval of the settlement and some level of continuing judicial oversight.'" Bell v. Bd. of Cty. Comm'rs, 451 F.3d 1097, 1103 (10th Cir. 2006) (quoting T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 469, 479 (7th Cir. 2003)).

> Hence, if a court does not incorporate a private settlement into an order, does not sign or otherwise provide written approval of the settlement's terms, and does not retain jurisdiction to enforce performance of the obligations assumed by the settling parties, the settlement does not bear any of the marks of a consent decree and does not confer prevailing party status on the party whose claims have been compromised. A fee award cannot be based on an order that merely recognizes the fact of the parties' agreement and dismisses the case because there is no longer a dispute before it.

Id. (quotations and citations omitted).

A

Here, the Order Adopting Stipulation entitles Verlo to attorneys' fees because it provides for judicial enforcement of the relief on the merits to which the parties agreed, thus materially altering their relationship. See Biodiversity Conservation Alliance v. Stem, 519 F.3d 1226, 1230 (10th Cir. 2008) ("[A] party is entitled to attorneys' fees [as a prevailing party] only if it could obtain a court order to enforce the merits of some portion of the claim it made in its suit.").

Before the district court entered the Order Adopting Stipulation, Denver could have arrested Verlo for handing out jury nullification literature or violating any

8

aspect of the Plaza Order, and the only redress would have been to protest that those actions violated the First Amendment. Cf. Biodiversity, 519 F.3d at 1230 (10th Cir. 2008) ("Having won no judgment on the merits . . . , the plaintiffs . . . could at most hope for another chance to present their case on the merits to a court.") (citing Buckhannon, 532 U.S. 598); see also Xlear, Inc. v. Focus Nutrition, LLC, 893 F.3d 1227, 1237–38 (10th Cir. 2018) (citing Biodiversity, 519 F.3d at 1230). After the district court entered the Order Adopting Stipulation, if Denver had arrested Verlo for either of those activities, Verlo would have had judicial recourse against Denver. Cf. Al-Maleki v. Holder, 558 F.3d 1200, 1206 (10th Cir. 2009) ("The order placed the weight of judicial authority behind [the defendant's] stipulation that [the plaintiff] was entitled to be naturalized by imposing a judicially enforceable obligation on [the defendant] to naturalize [the plaintiff] by a date certain."). Because the Order Adopting Stipulation contained the necessary judicial imprimatur to give Verlo "substance [they] c[ould] rely on in enforcing the merits of [their] case," it conferred prevailing-party status on Verlo.[3] Biodiversity, 519 F.3d at 1230.

---

[3] Denver argues that the Order Adopting Stipulation did not alter the legal relationship between the parties because the individuals whose conduct precipitated the suit were arrested for reasons beyond passing out jury nullification. The factual record, however, runs contrary to Denver's claim: one individual was arrested pursuant to a warrant for passing out jury nullification literature, Aplt. App., Vol. I at 24–25, and the other was arrested for failing to identify himself, which the statute only requires if a person is committing, has committed, or is about to commit a crime – and the only crime here was passing out jury nullification literature. Id., Vol. V at 532–37; see also C.R.S. § 16-3-103. Further, even if present in the record, this factual difference would not matter. Prevailing-party status is determined by a change in the parties' legal relationship. See Farrar, 506 U.S. at 111–12. Thus, the question is not

B

The relief provided by the Order Adopting Stipulation is unaffected by the subsequent dissolution of the preliminary injunction at the end of the case. Thus, <u>Sole v. Wyner,</u> 551 U.S. 74 (2007), does not apply.

In <u>Sole</u>, the Supreme Court addressed whether a plaintiff prevailed under § 1988 when she won a preliminary injunction but was denied a permanent injunction after an adjudication on the merits, and concluded she did not. 551 U.S. at 78, 86–88 (holding that, because the plaintiff's relief was "ephemeral," "provisional," and "transient" in nature, she could not recover fees when "she leaves the courthouse emptyhanded.").

As in <u>Sole</u>, Verlo was granted a preliminary injunction that was later dissolved. But <u>Sole</u> does not apply because the dissolved preliminary injunction was not the district court's basis for awarding fees to Verlo. Instead, the Order Adopting Stipulation is the relevant order. Unlike the plaintiff in <u>Sole</u>, Verlo has obtained lasting relief. The Order altered the parties' relationship and afforded Verlo the continuing remedy of judicial enforcement should Denver violate its terms. Unlike the government entity in <u>Sole</u>, Denver did not ever achieve a judgment on the merits. While the preliminary injunction was dissolved against Denver, Denver was

---

whether Denver <u>did</u> arrest the individuals for passing out jury nullification literature, but whether Denver <u>could have</u>, before the Order Adopting Stipulation was entered. By "lend[ing] judicial teeth to the merits of the [Appellees'] case," the Order Adopting Stipulation changed the legal relationship between the parties. <u>Biodiversity</u>, 519 F.3d at 1230.

dismissed without prejudice on mootness grounds and remained out of the litigation, at its own urging, for the rest of the case. Thus, the district court's merits ruling applies only to the Second Judicial District and the preliminary injunction; it has no impact on Denver and the Order Adopting Stipulation. <u>Sole</u> does not govern.

The Order Adopting Stipulation confers prevailing party status on Verlo. The judgment of the district court is therefore AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

11