[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 30, 2010
JOHN LEY
CLERK

No. 10-10680
Non-Argument Calendar
_____

D.C. Docket No. 3:08-cv-01106-HES-JRK

WAIL M. ABDELGALEL,

Plaintiff-Appellant,

versus

ERIC HOLDER,
SECRETARY MICHAEL CHERTOFF,
ROSEMARY MELVILLE,
JONATHAN SCHARFEN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 30, 2010)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Wail M. Abdelgalel appeals the district court's order denying (1) his motion to confirm his naturalization and oath of citizenship administered by the United States Citizenship and Immigration Services ("USCIS") and (2) his motion for attorneys fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). After review, we affirm the district court's denial of the motion to confirm, but reverse the district court's denial of the motion for attorneys fees and remand for further consideration consistent with this opinion.

## I. BACKGROUND

### A. Application for Naturalization

In 2000, Abdelgalel, who was born in Egypt, became a lawful permanent resident of the United States. In April 2005, Abdelgalel filed an application for naturalization with the USCIS. Abdelgalel passed the English language and history tests. On January 23, 2006, an immigration officer interviewed Abdelgalel. Over two years later, the USCIS had not acted on Abdelgalel's application.

### B. Abdelgalel's § 1447(b) Complaint

Section 1447(b) of Title 8 permits an applicant for naturalization to request a hearing in the district court if the government fails to make a determination within 120 days of the examination conducted on the application. 8 U.S.C. §

1447(b). Under § 1447(b), the district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." Id.

In June 2008, Abdelgalel filed this action in the district court pursuant to § 1447(b). Abdelgalel asked the district court either to naturalize him as permitted by § 1447(b) or, in the alternative, to enter an order requiring the USCIS to adjudicate his application. Abdelgalel also requested attorneys fees and costs under the EAJA. Abdelgalel's action named as defendants: Michael B. Mukasey, the Attorney General of the United States; Michael Chertoff, the Secretary of the Department of Homeland Security; Jonathan Scharfen, the Acting Director of the USCIS; and Rosemary Melville, the Director of the Atlanta Office of the USCIS ("the government defendants").[1]

## C. Defendants' Motion to Remand

In response, the government defendants filed a motion to remand the case to the USCIS, stating that they needed additional time to complete a background investigation. The government defendants asked for 120 days to finish the

---

[1]During the course of the litigation, Eric Holder was substituted for Michael Mukasey as the Attorney General for the United States and Janet Napolitano was substituted for Michael Chertoff as the Secretary for the Department of Homeland Security pursuant to Federal Rule of Civil Procedure 25(d).

3

investigation and adjudicate Abdelgalel's application. According to an affidavit attached to the motion to remand, USCIS had re-interviewed Abdelgalel on April 2, 2009 and additional investigation was needed based on unspecified information Abdelgalel provided at that time.

Abdelgalel opposed remand, arguing that all necessary background checks already had been completed and the government defendants had not identified any public safety or national security reason for further investigation. Abdelgalel contended that the government had acted in bad faith and asked the district court to adjudicate his application.[2] Alternatively, if the district court was inclined to remand, Abdelgalel asked the court to "[e]nter an order, specifically a writ of mandamus, requiring Defendants to adjudicate Plaintiff's Form N-400, Application for Naturalization within a specific time period . . . ." Abdelgalel also renewed his request for attorneys fees and costs under the EAJA.

## D. Remand Order and Writ of Mandamus

On June 19, 2009, the district court entered an "Order and Writ of Mandamus" granting the government defendants' motion for remand. The district

---

[2]Abdelgalel stated that, after he filed this action, the USCIS sent him (but not his counsel of record) notification to appear for English language and history tests, despite the fact that he had already taken and passed these tests. According to Abdelgalel, when he appeared as directed, he was not given the tests, but instead interrogated by federal agents without his attorney present.

court noted that it was "not wholly convinced that USCIS has been as diligent as it maintains" in addressing Abdelgalel's application and that it was "concerned by the 'bad faith' arguments" raised by Abdelgalel. Nonetheless, for reasons of economy, the district court concluded that remand was the appropriate relief.

However, the district court granted Abdelgalel's request for a definitive deadline for adjudication. Specifically, the district court directed the government defendants to adjudicate Abdelgalel's application "within **NINETY (90)** days of the issuance of this Writ. If Plaintiff's application is not adjudicated by this date, this Court, upon proper motion, will schedule a status conference and, at that time, may choose to exercise jurisdiction over this matter." The court-imposed ninety-day deadline was September 17, 2009.

The district court stayed Abdelgalel's motion for attorneys fees under the EAJA. The district court concluded that Abdelgalel had not yet satisfied the "prevailing party" requirement of the statute, but noted that, if USCIS failed to comply with the court's order, Abdelgalel's motion for attorneys fees might be revisited.

On July 30, 2009, within the court's ninety-day time frame, the USCIS approved Abdelgalel's application for naturalization. However, as of September 17, 2009, Abdelgalel still had not been administered the oath of citizenship. On

that date, Abdelgalel filed a status report with the district court, advising the court

of this fact and asking the court to administer the oath of citizenship. Abdelgalel

again requested attorneys fees under the EAJA. On September 23, 2009,

Abdelgalel attended the USCIS's naturalization ceremony, was administered the

oath of citizenship and became a United States citizen.

**E.      Motion for Attorneys Fees and Costs**

Shortly thereafter, Abdelgalel filed a motion for attorneys fees under the

EAJA. Abdelgalel argued that he was a "prevailing party" under the EAJA

because the district court (1) had granted his request to issue a writ of mandamus

directing the USCIS to adjudicate his application within a specified time and (2)

had remained ready to assert jurisdiction over the matter if the USCIS had failed to

do so. Because Abdelgalel had obtained the relief he sought (the prompt

adjudication of his application on remand), he asked the district court to lift the

stay and award him attorneys fees and costs. The government defendants opposed

the motion for attorneys fees and also moved to dismiss Abdelgalel's action as

moot, arguing that USCIS had "voluntarily adjudicated" Abdelgalel's application.

**F.      Motion to Confirm Naturalization**

Abdelgalel also filed a "Motion to Confirm Naturalization Process."

Abdelgalel argued the USCIS no longer had jurisdiction when it administered his

6

oath of citizenship because jurisdiction had automatically reverted to the district court after the ninety-day deadline expired. Abdelgalel contended that his citizenship was in question and asked the district court to confirm his naturalization and administration of the oath of citizenship.

The government defendants argued that Abdelgalel's concerns about his citizenship were baseless because, under the terms of the district court's prior order, the USCIS had jurisdiction when the oath was administered. The government defendants emphasized that there was no provision under immigration law for a district court to "confirm" citizenship.

## G. Dismissal Order

The district court denied Abdelgalel's motion for attorneys fees under the EAJA, concluding that he was not a "prevailing party." The district court also denied Abdelgalel's motion for confirmation, finding that, because Abdelgalel was now a naturalized citizen, there was "no reason to re-exercise jurisdiction over this matter." Noting that all matters had been resolved, the district court granted the government's motion to dismiss the action as moot. Abdelgalel filed this appeal.

## II. DISCUSSION

## A. Motion to Confirm Naturalization

The district court denied Abdelgalel's motion for confirmation of naturalization. The district court explained that, because Abdelgalel was a naturalized citizen, it had no reason to "re-exercise" jurisdiction. We find no reversible error in this ruling.

The district court obtains jurisdiction over a naturalization application when an applicant files an action under § 1447(b) and shows that the USCIS has not made a determination within 120 days of the examination. 8 U.S.C. § 1447(b). At this point, the district court has two options; it can either determine the matter itself or remand the matter to the USCIS for a determination. Id.

Here, the district court remanded to the USCIS. By the terms of the district court's remand order, the USCIS had jurisdiction to make a determination as to Abdelgalel's application. Although the district court ordered the USCIS to adjudicate the application within ninety days, the district court did not condition the agency's continued jurisdiction on compliance with that deadline. Instead, the district court stated that, upon subsequent motion from Abdelgalel, it "may choose to exercise jurisdiction over this matter" if the application was not adjudicated by September 17, 2009.

Thus, under the terms of the remand order, jurisdiction did not revert back to the district court automatically on September 17, 2009, even if the USCIS had

8

failed to adjudicate Abdelgalel's application by that date. Abdelgalel first would have had to move the court for a status conference, at which time he would have had to ask the court to reassert jurisdiction, and the district court would have had to grant that request. None of these events took place.

Furthermore, the USCIS <u>did</u> adjudicate Abdelgalel's application before the September 17, 2009 deadline. It is undisputed that Abdelgalel's application was approved on July 30, 2009. Since the USCIS complied with the court's remand order, the USCIS retained jurisdiction over Abdelgalel's naturalization process when it administered the oath of citizenship to Abdelgalel. Because Abdelgalel's jurisdictional argument lacks merit, the district court properly denied Abdelgalel's motion for confirmation.[3]

**B.      Attorneys Fees under the EAJA**

Under the EAJA, the district court "shall award to a prevailing party" fees and other expenses "incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that

---

[3]Abdelgalel stresses that courts disagree as to whether a district court's remand under § 1447(b) vests exclusive jurisdiction in the agency or concurrent jurisdiction with the district court. We need not address this issue. Regardless of whether there was concurrent or exclusive jurisdiction in the agency, it is clear, under the district court's particular remand order here and the undisputed facts of this case, that the USCIS still had jurisdiction to proceed with the naturalization process after September 17, 2009. We also need not and do not address the government's alternative argument that immigration law does not authorize a district court to confirm naturalization.

9

special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 121 S. Ct. 1835 (2001), the Supreme Court explained that the term "prevailing party" is a term of art that refers to one who has received "at least some relief on the merits of his claims." Id. at 603, 121 S. Ct. at 1840 (quotation marks omitted). The Supreme Court explained that "enforceable judgments on the merits and court-ordered consent decrees create 'the material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." Id.; see also Morillo-Cedron v. District Director for the U.S. Citizenship & Immigration Servs., 452 F.3d 1254, 1258 (11th Cir. 2006). In Buckhannon, the Supreme Court rejected the "catalyst theory" for awarding attorneys fees, under which a plaintiff is a "prevailing party" if he "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon, 532 U.S. at 601, 605, 121 S. Ct. at 1838, 1840. The Supreme Court explained that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Id. at 605, 121 S. Ct. at 1840.

In sum, under Buckhannon, to be a prevailing party eligible for an award of attorneys fees, the plaintiff must show both a "material alteration of the legal relationship" of the parties and that the change is "judicially sanctioned." Buckhannon, 532 U.S. at 604-05, 121 S. Ct. at 1840; Morillo-Cedron, 452 F.3d at 1258; Am. Disability Ass'n, Inc. v. Chmielarz, 289 F.3d 1315, 1319 (11th Cir. 2002). Although "either a judgment on the merits or a consent decree clearly are sufficient to make the plaintiff a 'prevailing party,' the essential test established by the Court [in Buckhannon] requires the plaintiff to achieve a 'judicially sanctioned change in the legal relationship of the parties.'" Am. Disability Ass'n, Inc. v. Chmielarz, 289 F.3d 1315, 1319-20 (11th Cir. 2002) (quoting in part Buckhannon, 532 U.S. at 605, 121 S. Ct. at 1840, and concluding that a district court's dismissal order approving a settlement and retaining jurisdiction to enforce its terms establishes a "judicially sanctioned change in the legal relationship of the parties" because the plaintiff "may return to court to have the settlement enforced").

## C.    Eleventh Circuit's Morillo-Cedron

In Morillo-Cedron, this Court concluded that Buckhannon applies to the fee-shifting provisions of the EAJA. Morillo-Cedron, 452 F.3d at 1258. Additionally, Morillo-Cedron provides guidance here because it also arose in the context of the USCIS's delay in processing an immigration application.

11

In Morillo-Cedron, the Administrative Office of Appeals ordered the District Director of the USCIS to act on the plaintiffs' applications for lawful permanent residency. Id. at 1255. When the USCIS timely failed to do so, the plaintiffs filed an action under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedures Act. The plaintiffs also sought attorneys fees and costs under the EAJA. Id. The district court issued a show cause order "why the mandamus relief requested should not be granted." Id.

The USCIS then "voluntarily granted lawful permanent resident status" to some of the plaintiffs, referred to as the "adjusted plaintiffs," and scheduled interviews with the remaining plaintiffs, referred to as the "non-adjusted plaintiffs." Id. & nn. 1, 2. The district court issued an interim order requiring the USCIS to "proceed on the plaintiffs' voluntary adjustment status" and later denied the request for mandamus relief and dismissed the complaint. Id. However, the district court awarded the plaintiffs attorneys fees and costs under the EAJA. Id. The district court relied on the catalyst theory, concluding that the adjusted plaintiffs were prevailing parties because plaintiffs' action caused the government to process their applications. Id.

This Court reversed the award under the EAJA. Applying Buckhannon, we concluded that the plaintiffs were not "prevailing parties." Id. at 1258. We

12

explained that, under <u>Buckhannon</u>, "a 'prevailing party' is one who has been awarded some relief by the court; i.e., some court-ordered change in the legal relationship between the plaintiff and the defendant," and that a defendant's voluntary change in conduct "'lacks the necessary judicial imprimatur on the change.'" <u>Id.</u> at 1257 (quoting <u>Buckhannon</u>, 532 U.S. at 604-05, 121 S. Ct. at 1840). This Court concluded that the plaintiffs did not satisfy the prevailing party requirement because they did not litigate the case to final judgment, stating:

> [W]e hold the plaintiffs here are not "prevailing parties." The record demonstrates that they did not litigate to judgment the District Director's failure to abide by the AAO rules and process their applications. In other words, the plaintiffs did not obtain a court-ordered change in the legal relationship between them and the Government; they did not obtain relief on the merits of their claim. The Government voluntarily processed their applications and conducted interviews before the district court entered any final judgment. Moreover, the district court granted the Government's motion to dismiss because the case was moot.

<u>Id.</u> at 1258.

## D.    Other Circuits

No Circuit has addressed the precise circumstances presented here, that is, a remand order with specific instructions to adjudicate a naturalization application within a specific period of time. The closest case we could find is <u>Al-Maleki v. Holder</u>, 558 F.3d 1200 (10th Cir. 2009), but there the district court actually

13

adjudicated the application itself and the Tenth Circuit then concluded that the plaintiff was a prevailing party.

More specifically, in Al-Maleki, the district court denied the government's motion for an unrestricted remand, held a hearing and then ordered the government to answer the complaint. 558 F.3d at 1203. In its answer, the government represented that the background check had been completed and approval of Al-Maleki's application was likely. Id. Thereafter, the parties filed a joint motion for remand so the oath of citizenship could be administered by July 18, 2007. Id. The district court granted the motion and instructed the USCIS to administer the oath of citizenship by July 18, 2007. Id.

The Tenth Circuit concluded that Al-Maleki was a prevailing party because the district court's remand order "granted Al-Maleki substantive relief on the merits of the claims raised in his § 1447(b) action." Id. at 1206. The Tenth Circuit explained that the district court's order resolved Al-Maleki's claims by "concluding he was entitled to be naturalized and ordering USCIS to administer the oath on a date certain." Id. As a consequence, "[t]he order . . . also provided the judicial imprimatur which is indispensable to the prevailing party determination." Id. The Tenth Circuit rejected the argument that the USCIS voluntarily naturalized Al-Maleki, explaining that "[e]ntry of the order, not

14

USCIS's stipulation, was the action which indelibly altered the legal landscape between USCIS and Al-Maleki." Id. (quotation marks and alterations omitted).

On yet another set of circumstances, the First Circuit has concluded that a § 1447(b) plaintiff was not a prevailing party under the EAJA. In Aronov v. Napolitano, the parties voluntarily settled the dispute before the government responded to Aronov's complaint. 562 F.3d 84, 87 (1st Cir. 2009) (en banc). The parties then filed a joint motion to remand stating that the USCIS would grant Aronov's application, and the oath would be given no later than November 8, 2006. Id. The parties asked the district court to remand so that these actions could be taken. Id. The district court entered a single-line electronic order on the docket granting the motion to remand, but gave no instructions to the government. Id.

The First Circuit concluded that this electronic order was not a judgment on the merits or the "functional equivalent of a consent decree." Id. at 90. Rather, the First Circuit explained that the remand order "did not meet the judicial imprimatur standards" because it "lacked all of the core indicia of a consent decree." Id. at 92. The order (1) "did not order USCIS to do anything"; (2) "made no evaluation at all of the merits of the controversy" given that the government had not even answered the complaint and the parties had merely asked the court to dismiss the action; (3) "did not contain provisions for future enforcement typical

15

of consent decrees"; and (4) "merely returned jurisdiction to the agency to allow the parties to carry out their [private] agreement." Id.

**E.    District Court's Remand**

This case falls in between the Tenth Circuit's Al-Maleki decision and the First Circuit's Aronov decision. Here, the district court's remand order actually granted Abdelgalel's request for a writ of mandamus and directed the USCIS to adjudicate the application within a specific, narrow period of time, i.e., within ninety days. This is one of the two forms of relief authorized under § 1447(b). Thus, the remand order requiring the USCIS to adjudicate Abdelgalel's application afforded Abdelgalel "some relief" on the merits.

Furthermore, the district court's remand order changed the legal relationship between the parties, as required by Buckhannon. At the time he filed his action, Abedelgalel had waited for over two years for the USCIS to make a determination on his application. The district court's order required the USCIS to make that determination within ninety days and reserved the right to reassert jurisdiction if the USCIS failed to comply. The USCIS would have violated the remand order had it failed to adjudicate Abdelgalel's application within the court-ordered time frame. By giving Abdelgalel a legally-enforceable right to adjudication within ninety days, the remand order changed the legal relationship between the parties.

16

The government characterizes the USCIS's adjudication of Abdelgalel's application as "voluntary." However, the USCIS's adjudication was not voluntary in the Buckhannon sense. Rather, at the time the application was approved, the USCIS was under a court order pursuant to § 1447(b) to do so by September 17, 2009, and had no choice in the matter. This fact materially distinguishes this case from Morillo-Cedron, in which the district court had issued a show cause order, but had not yet acted on the merits of the request for mandamus relief. In other words, unlike here, the government in Morillo-Cedron acted on the plaintiffs' applications before being ordered to do so.

The government defendants argue that Abdelgalel did not prevail because he opposed their motion to remand. This is not a complete characterization of Abdelgalel's position in the district court. Given what Abdelgalel believed was bad faith on the government's part, Abdelgalel's first preference was for the district court itself to address his application. However, Abdelgalel's response to the motion to remand alternatively requested that, if the district court chose to remand, it give the USCIS a finite period of time in which to act. This position was consistent with Abdelgalel's complaint, which prayed in the alternative for an order requiring the USCIS to act on his application. And, the district court granted

17

Abdelgalel this requested relief. Thus, Abdelgalel satisfied the EAJA's prevailing party requirement.

Accordingly, we affirm the district court's denial of Abdelgalel's motion to confirm his naturalization. However, we reverse the district court's finding that Abdelgalel had not satisfied the EAJA's "prevailing party" requirement. On remand, the district court must address whether Abdelgalel has satisfied the other requirements of the EAJA, namely whether the government's position in the § 1447(b) proceedings was substantially justified or if special circumstances make an award of attorneys fees and costs unjust, issues upon which we express no opinion.

**AFFIRMED IN PART; REVERSE AND REMANDED IN PART.**