FILED
United States Court of Appeals
Tenth Circuit

August 21, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHAHID IQBAL,

      Plaintiff-Appellant,

v.

ERIC H. HOLDER, JR., Attorney
General of the United States; JANET
NAPOLITANO, Secretary of Homeland
Security; ROBERT S. MUELLER, III,
Director, Federal Bureau of
Investigations; JOSE R. OLIVARES,
Oklahoma Field Office Director, United
States Citizenship and Immigration
Services; SANFORD COATS, United
States Attorney, Western District of
Oklahoma,

      Defendants-Appellees.

No. 11-6231

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:10-CV-00633-F)**

---

Submitted on the briefs:[*]

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

E. Vance Winningham, Ken Feagins, of Counsel, Winningham, Stein & Basey, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Jeffrey S. Robins, Assistant Director, Aaron S. Goldsmith, Senior Litigation Counsel, Katherine E.M. Goettel, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration and Litigation, Washington, D.C., for Defendants-Appellees.

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

**BRORBY**, Circuit Judge.

Shahid Iqbal appeals the district court's denial of his motion for attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    Background

Mr. Iqbal is a native and citizen of Pakistan who acquired lawful permanent residency in the United States in 2002.  On July 11, 2008, he filed an application for naturalization with the United States Citizenship and Immigration Services (USCIS).  On August 17, 2009, he successfully passed a naturalization examination, *see* 8 U.S.C. § 1446, but the USCIS did not adjudicate his application due to an ongoing background check by the FBI.  On January 11, 2010, Mr. Iqbal met with a USCIS officer who told him his case remained under review.

On June 18, 2010, still having received no decision on his application, Mr. Iqbal filed the underlying action pursuant to 8 U.S.C. § 1447(b), which authorizes a petition to the district court for a hearing on a naturalization application when "there is a failure to make a determination . . . before the end of the 120-day period after the date on which the examination is conducted under [§ 1446]." The statute further provides that the district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b).[1]

In his petition, Mr. Iqbal asked the district court (1) to take jurisdiction; (2) to find that the FBI unreasonably and unlawfully delayed completing the background check and providing the results to the USCIS; (3) to direct the FBI to complete all necessary checks within thirty days; (4) to review his application, determine that he met the citizenship requirements, grant him naturalization, and issue a Certificate of Citizenship; (5) to order a hearing if necessary; and (6) to provide any further relief deemed just and necessary.

On September 13, 2010, the USCIS denied Mr. Iqbal's naturalization application on the ground that he had not met the physical presence requirements for

---

[1]     The term "Service" is defined as "the Immigration and Naturalization Service of the Department of Justice," 8 U.S.C. § 1101(a)(34), commonly referred to as the INS. But "[t]he INS ceased to exist on March 1, 2003, and its functions were transferred to the [USCIS] within the newly formed Department of Homeland Security." *Batalova v. Ashcroft*, 355 F.3d 1246, 1248 n.1 (10th Cir. 2004). Accordingly, we read the statutory definition of "Service" to mean the USCIS.

naturalization. Based on the denial, defendants filed a motion to dismiss Mr. Iqbal's § 1447(b) petition as moot. In the alternative, defendants asked the district court to decline jurisdiction in deference to the agency's expertise in adjudicating naturalization applications. The district court denied the motion to dismiss, concluding that once Mr. Iqbal filed his petition, the USCIS no longer had jurisdiction to adjudicate the naturalization application. In reaching this conclusion, the court noted there was no governing Tenth Circuit precedent, so it relied on dicta in *Al-Maleki v. Holder*, 558 F.3d 1200 (10th Cir. 2009). In that case, we found persuasive the reasoning of the Ninth and Fourth Circuits that the filing of a § 1447(b) petition vests exclusive jurisdiction over a naturalization application in the federal district court, but we did not decide the issue ourselves. *Id.* at 1205 n.2. Having concluded that it had exclusive jurisdiction, the district court opted to remand the matter to the USCIS for further proceedings, as provided for in § 1447(b), rather than determine the merits of Mr. Iqbal's petition itself. The court stated:

> As the USCIS has already denied plaintiff's application, the court provides the following instructions on remand. The USCIS may determine how to best proceed on remand. Nothing in this order is intended to require the USCIS to change its earlier determination of the merits of the application. The USCIS shall, however, determine whether reconsideration of the merits is called for and shall issue an order accordingly. If the USCIS finds that reconsideration is appropriate, then the USCIS shall reconsider the plaintiff's application and notify the parties of the result. Plaintiff should recognize that even if the USCIS decides to reconsider the merits of his application, the ultimate result may not change.

Aplt. App. at 23-24. The remand order was filed on January 4, 2011, and the court terminated the case on that date.[2]

Mr. Iqbal then filed a motion on January 7, 2011, asking the court to amend its remand order to include a forty-five-day deadline for USCIS action. On January 19, the USCIS reissued its September 13 decision denying Mr. Iqbal's naturalization application. On January 26, Mr. Iqbal filed a motion for summary judgment on his § 1447(b) petition. On February 2, the district court denied Mr. Iqbal's motion to amend the remand order because the USCIS had already denied Mr. Iqbal's naturalization application. The court also struck the motion for summary judgment based on its conclusion that the remand deprived it of jurisdiction over the merits of Mr. Iqbal's naturalization application.

On April 5, 2011, Mr. Iqbal filed his motion for an award of attorney fees and expenses under EAJA. In relevant part, EAJA mandates such an award to a "prevailing party other than the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Mr. Iqbal argued that he was a prevailing party because the district court denied the government's motion to dismiss for lack of jurisdiction and remanded the case to the USCIS pursuant to § 1447(b) for

---

[2]     In their reply in support of their motion to dismiss, defendants added an alternative request that the court remand the case to the USCIS out of deference to the agency's expertise handling naturalization applications. The district court did not state whether its remand was based on that request.

a determination of the merits of his naturalization application. He also argued that the government's delay on his application and its position on its motion to dismiss for lack of jurisdiction were not substantially justified.

The district court denied the fee motion on July 6, 2011, concluding that Mr. Iqbal was not a prevailing party because he had obtained no judicial determination on the merits of his claims, the court had not ordered the USCIS or the FBI to act within a certain period of time, and the court had not retained jurisdiction after remanding the matter to the agency. The court concluded in the alternative that the government's prelitigation delay was substantially justified on the ground of public safety and national security, and that its litigation position on the jurisdictional issue was also substantially justified because of the lack of Tenth Circuit law concerning whether the USCIS retains jurisdiction to adjudicate naturalization applications after an applicant files a § 1447(b) petition.

Meanwhile, Mr. Iqbal filed a motion for reconsideration of his naturalization application with the USCIS. By letter dated July 1, 2011, the USCIS informed Mr. Iqbal that it was withdrawing its January 19 denial of his application because he had overcome the grounds for the denial in his motion for reconsideration. The USCIS ultimately granted Mr. Iqbal's application and conferred United States citizenship upon him on August 26, 2011.

**II. Discussion**

Mr. Iqbal appeals the district court's denial of his EAJA motion. As we base our decision on the district court's prevailing-party determination, we need not review its conclusion that the government's position was substantially justified. We review the prevailing-party determination de novo. *Al-Maleki*, 558 F.3d at 1204.

In determining that Mr. Iqbal was not a prevailing party under 28 U.S.C. § 2412(d)(1)(A), the district court applied the standard set out in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). In *Buckhannon*, the Supreme Court rejected the so-called "'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601. The Court concluded that "prevailing party" is "a legal term of art," *id.* at 603, and it does not "include[] a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," *id.* at 600. Instead, there must be a "material alteration of the legal relationship of the parties." *Id.* at 604 (quotation omitted). A party is not a prevailing party if its lawsuit does not result in a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. There must be some "judicial *imprimatur* on the change." *Id.* And as we have interpreted *Buckhannon*, "a court order that favors one party but does not entitle that party to some method of

- 7 -

enforcing the merits of the claim is insufficient to qualify that party for attorneys' fees as a 'prevailing party.'" *Biodiversity Conservation Alliance v. Stem*, 519 F.3d 1226, 1230 (10th Cir. 2008).

Mr. Iqbal correctly points out that *Buckhannon* was not an EAJA case, and he argues that this makes a difference because a core purpose of EAJA "is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions," *Astrue v. Ratliff*, 130 S. Ct. 2521, 2530 (2010) (Sotomayor, J., concurring) (quotation omitted). He therefore asks us to apply *Kopunec v. Nelson*, 801 F.2d 1226 (10th Cir. 1986), which he categorizes as a catalyst-theory case, not *Buckhannon*.

We decline to do so. Although we have applied the *Buckhannon* interpretation of "prevailing party" in two published EAJA cases, we have not expressly explained why it was proper to do so. *See Al-Maleki*, 558 F.3d at 1204-06; *Biodiversity Conservation Alliance*, 519 F.3d at 1229-31.[3] We take the opportunity to do so here. As noted, the Supreme Court in *Buckhannon* was construing "a legal term of art"— namely, "prevailing party,"—used in many fee-shifting statutes. 532 U.S. at 603. The court observed that it had consistently interpreted the numerous fee-shifting statutes listed in the appendix to Justice Brennan's dissent in *Marek v. Chesny*,

---

[3]    We have expressly concluded in an unpublished case that *Buckhannon*'s construction of "prevailing party" "applies with equal force to the prevailing party provisions in EAJA. *Scherer v. United States*, 88 F. App'x 316, 320 n.5 (10th Cir. 2004).

- 8 -

473 U.S. 1, 43-51 (1985). *Buckhannon*, 532 U.S. at 602-03 & n.4. The *Marek* appendix included EAJA. 473 U.S. at 49. Moreover, in enacting EAJA, it was the House Committee's intention that the definition of "prevailing party" "be consistent with the law that has developed under existing [fee-shifting] statutes." H.R. Rep. 96-1418, at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. Thus, we conclude that *Buckhannon*'s interpretation of the term "prevailing party" applies to that term as used in 28 U.S.C. § 2412(d)(1)(A).

Other circuits that have considered the issue have reached the same conclusion—that *Buckhannon* applies to § 2412(d)(1)(A). *See, e.g.*, *Aronov v. Napolitano*, 562 F.3d 84, 88-89 (1st Cir. 2009); *Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008); *Goldstein v. Moatz*, 445 F.3d 747, 751 (4th Cir. 2006); *Morillo-Cedron v. Dist. Dir. for U.S. Citizenship & Immigration Servs.*, 452 F.3d 1254, 1257-58 (11th Cir. 2006); *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492 n.1 (D.C. Cir. 2003); *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1376-79 (Fed. Cir. 2002); *Perez-Arellano v. Smith*, 279 F.3d 791, 794-95 (9th Cir. 2002). And some circuits have applied *Buckhannon* to § 2412(d)(1)(A) without further analysis. *See Othman v. Chertoff*, 309 F. App'x 792, 794 (5th Cir. 2008); *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 840 (6th Cir. 2006).

As to Mr. Iqbal's reliance on *Kopunec*, we conclude that *Kopunec* is consistent with *Buckhannon*. In *Kopunec*, the district court issued a preliminary injunction against deportation and remanded the matter to the INS for further proceedings after

concluding that the agency had committed a factual error regarding an automatic visa revocation and had not followed established visa revocation proceedings. 801 F.2d at 1227. The court also granted Mr. Kopunec's motion for EAJA fees under § 2412(d)(1)(A). *Id.* at 1227-28 & n.2. We concluded that the district court did not abuse its discretion in determining that Mr. Kopunec was a prevailing party, reasoning that his "avoidance of immediate deportation by obtaining a reversal of the INS's automatic revocation of his visa and a preliminary injunction against deportation constitutes a substantial victory of his position." *Id.* at 1229. Thus, the relief Mr. Kopunec obtained was a "judicially sanctioned change in the legal relationship of the parties," *Buckhannon*, 532 U.S. at 605; it did not result from any catalyst effect his § 1447(b) petition had on agency action.

Having decided that the *Buckhannon* interpretation of "prevailing party" applies to § 2412(d)(1)(A) and that *Kopunec* is not to the contrary, we conclude that Mr. Iqbal was not a prevailing party. The district court decided nothing about the merits of his petition or his naturalization application. Nor did it grant any of the specific relief requested in his petition. Instead, the court simply remanded for the USCIS to determine the merits of the application. Thus, it did not lend its *imprimatur* to any change in the parties' legal relationship. *See id.* And clearly there was no consent decree. *See id.* at 604. The only legal "victory" for Mr. Iqbal occurred when the district court remanded the case to the agency rather than dismissing it as moot after the USCIS issued its September 2010 denial of his

naturalization application. That sort of victory is not the type of legal victory sufficient to confer prevailing-party status on Mr. Iqbal. *See id.* at 605 (rejecting notion that establishing that a complaint can withstand a motion to dismiss for lack of jurisdiction makes a plaintiff a prevailing party). Further, the district court's remand order stands in stark contrast to the victory held sufficient in *Kopunec* to confer prevailing party status. And even though the remand order "favor[ed]" Mr. Iqbal, it did not "entitle [him] to some method of enforcing the merits of [his] claim." *Biodiversity Conservation Alliance*, 519 F.3d at 1230. Therefore, it was "insufficient to qualify [him] for attorneys' fees as a 'prevailing party.'" *Id.*

Mr. Iqbal also relies on *Al-Maleki*, but like *Kopunec*, that case is consistent with *Buckhannon* and distinguishable from Mr. Iqbal's. In *Al-Maleki*, we affirmed an EAJA award under *Buckhannon* principles because the district court ordered a remand with instructions that the USCIS naturalize Mr. Al-Maleki by a date certain. 558 F.3d at 1203. That "order placed the weight of judicial authority behind USCIS's stipulation that Al-Maleki was entitled to be naturalized by imposing a *judicially enforceable* obligation on USCIS to naturalize Al-Maleki by a date certain." *Id.* at 1206. Here, the district court's remand order simply instructed the USCIS to determine the merits of Mr. Iqbal's naturalization application; it did not order the USCIS to naturalize him, and it did not order the USCIS to adjudicate the

application by a date certain. To the contrary, it left the matter to the USCIS's discretion "how to best proceed on remand." Aplt. App. at 23.[4]

## III.    Conclusion

For the foregoing reasons, we conclude that Mr. Iqbal was not a prevailing party under 28 U.S.C. § 2412(d)(1)(A). On that basis alone, he is not entitled to an EAJA award, and we need not consider whether the position of the United States was substantially justified. The judgment of the district court is AFFIRMED.

---

[4] In his reply brief, Mr. Iqbal cites four additional cases awarding EAJA fees, arguing that they display "better legal reasoning" than either the district court's decision or the appellees' brief. Aplt. Reply Br. at 4. We see no reason to deviate from the general rule that "[w]e do not consider arguments raised for the first time in a reply brief." *United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996).