**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 6, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JEREMY PINSON,

  Petitioner - Appellant,

v.

DAVID BERKEBILE,

  Respondent - Appellee.

No. 14-1108
(D.C. No. 1:12-CV-03006-RM)
(D. Colo.)

---

**ORDER & JUDGMENT**[*]

---

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

---

Jeremy Pinson, a federal prisoner, appeals the denial of his 28 U.S.C. § 2241

application challenging his loss of good-time credits resulting from a prison disciplinary

conviction. In his pro se appeal,[1] he claims that the district court erred in concluding that

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not be of material assistance in the determination of this case. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We liberally construe pro se filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[B]ut we do not assume the role of advocate" for pro se litigants. *Merryfield v. Jordan*, 584 F.3d 923, 924 n.1 (10th Cir. 2009) (internal quotation mark omitted).

the prison's disciplinary proceedings afforded him adequate due process, and he also challenges the district court's denial of his motions for discovery and appointment of counsel. We find no error and affirm.[2]

The disciplinary conviction resulted from an incident in which a prison guard saw Pinson put his arm through a food slot. As the guard approached to remove Pinson's arm from the slot, Pinson threw an "unknown substance which hit the [guard] in the left side of his face, eye, and upper torso." R. at 50. When the guard couldn't close the food slot, he soon saw why—Pinson had jammed toilet paper in the closing mechanism. The guard filed an incident report that charged Pinson with threatening another with bodily harm, tampering with a lock device, and assault without serious injury. Prison staff investigated, partly by reviewing video that corroborated the guard's account. Ultimately, the Discipline Hearing Officer found Pinson guilty of disciplinary infractions and revoked his accrued 81 days of good-time credits.

Pinson filed an application for a writ of habeas corpus under 28 U.S.C. § 2241 in the Federal District Court for the District of Colorado. He alleged that the prison had violated his First and Fifth Amendment rights in its disciplinary process, asserting twelve separate

---

[2] We grant Pinson's motion to proceed *in forma pauperis*. We deny Pinson's motion to expand the record because the materials weren't before the district court and he presents no reason why the materials fall within the "rare exception justifying the exercise of our inherent equitable power to supplement the record on appeal with new material." *United States v. Wardell*, No. 13-1152, 2014 WL 1677823, at *2 (10th Cir. April 29, 2014) (internal quotation mark omitted); *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) ("This court will not consider material outside the record before the district court.").

issues. The district court rejected each issue and dismissed the application with prejudice. Pinson had also moved in the district court for discovery and appointment of counsel, which the district court didn't address. But by entering final judgment, the court implicitly denied the pending motions. *See, e.g.*, *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 882 (7th Cir. 2012) ("Final judgment necessarily denies pending motions.").

On appeal, Pinson raises just three issues, abandoning the majority of the arguments he raised in the district court. First, he claims that the district court erred by dismissing his First Amendment retaliation claim when, he says, he presented sufficient facts showing that the guard fabricated the incident report in response to his having filed grievances against the guard. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("[R]etaliation for filing lawsuits and administrative grievances violates both the inmate's right of access to the courts and the inmate's First Amendment rights." (internal quotation marks omitted)). Second, although he hadn't raised his mental competency during the disciplinary process, Pinson argued in the district court that the hearing officer should have conducted a mental exam under Bureau of Prisons regulations. Now he challenges the district court's use of records in other litigation to conclude that he didn't require a mental exam during the disciplinary process. And third, he challenges the district court's implicit denial of his motion for discovery and the appointment of counsel. We reject each argument.[3]

---

[3] Pinson raises a number of new arguments in his reply brief: "the right to assistance at a disciplinary proceeding, now applicable to persons who are illiterate

(continued)

- 3 -

We review the district court's factual findings for clear error and its legal conclusions de novo. *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). An application for a writ of habeas corpus "under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity." *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). We may grant relief only if an applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). But "an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see Howard*, 487 F.3d at 811 (citing *Mitchell* in the context of a federal prisoner raising due-process challenges to his loss of good-time credits). For a disciplinary proceeding to comply with the minimum procedural due process requirements, a prisoner must receive: (1) advance written notice, (2) an opportunity to call witnesses and present documentary evidence in his defense, and

---

or faced with issues to [sic] complex for them to understand, should also extend to persons with serious mental illness," Appellant's Reply Br. 2; the "Rehabilitation Act" requires assistance at a disciplinary proceeding for the mentally ill, *id.*; the Tenth Circuit "should adopt a per se rule that serious mental illness strongly favors appointment of counsel," *id.* at 5–6; the district court erred by not reviewing the video; and that either the hearing officer or the district court violated Pinson's constitutional rights by not showing him the video. We decline to address these new arguments on appeal. *Iqbal v. Holder*, 693 F.3d 1189, 1195 n.4 (10th Cir. 2012) ("[W]e do not consider arguments raised for the first time in a reply brief.").

(3) a written statement of the evidence and reasoning that supports the disciplinary action. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Additionally, "revocation of good time does not comport with the minimum requirement of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* (citation and internal quotation marks omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* We may uphold the hearing officer's decision "even if the evidence supporting the decision is meager." *Howard*, 487 F.3d at 812 (internal quotation marks omitted).

On appeal, Pinson doesn't challenge that he received notice, an opportunity to present evidence to the hearing officer, and a written statement from the hearing officer. Instead, he challenges whether enough evidence supported the hearing officer's findings.

We reject Pinson's retaliation claim that the guard fabricated the incident report because Pinson had reported the guard for misconduct. "[A]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction" when a hearing officer finds that the inmate committed "the actual behavior underlying that charge" and affords the inmate "adequate due process." *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011). Here, the hearing officer found that Pinson committed the misbehavior and that decision comported with due process because some evidence supported the hearing officer's decision. The hearing officer reviewed the guard's incident report as well as the investigating officer's report recounting what he had seen on the video. Both the report

- 5 -

and the video show that Pinson was disciplined for his misbehavior and not for any retaliation.[4] *See Maschner*, 899 F.2d at 949–50 (stating that a successful retaliation claim requires proof "that 'but for' the retaliatory motive, the incidents to which [the plaintiff] refers, including the disciplinary action, would not have taken place").

We also reject Pinson's challenge on appeal that he should have received a mental examination during the disciplinary process. Although Pinson didn't contest his mental fitness at the disciplinary hearing, we still consider the issue because Warden Berkebile stated at the district court that he didn't "intend to assert the defense of failure to exhaust administrative remedies." R. at 20. Pinson claims that the district court erred by assessing his competence based on a review of his abilities as manifested in "numerous public records of litigation" that he had filed in other proceedings. Pinson now says that these records were prepared by "jailhouse lawyers." Appellant's Br. 9. He argues the district court should have relied on "the opinions of qualified mental health experts" to determine that he "must be competent and responsible." *Id.*

Pinson's argument ultimately attacks the hearing officer's compliance with Bureau of Prisons regulations. The relevant regulation requires a mental exam only "[i]f it appears

---

[4] Although Pinson claims that the hearing officer "refused to view the video," Appellant's Br. 11, nothing in the record shows that Pinson asked the hearing officer to do so. At the hearing, Pinson contended only that the video didn't show the charged misconduct. The hearing officer stated that he had considered Pinson's defense, which included Pinson's view of what the video showed and didn't show, but found the guard and the investigating officer more credible than Pinson. Reweighing the credibility of witnesses isn't part of our minimal due process review. *Howard*, 487 F.3d at 812.

[the prisoner is] mentally ill at any stage of the discipline process." 28 C.F.R. § 541.6. On this record—even excluding the litigation documents that the district court bolstered its decision with—we conclude that the hearing officer complied with 28 C.F.R. § 541.6. In a declaration submitted to and relied on by the district court, the hearing officer declared that Pinson never appeared "mentally ill at any stage of the disciplinary process," explaining as follows:

> It appeared to me that Applicant was able to understand the nature of the disciplinary proceedings because he stated he did not commit the prohibited acts at issue, requested and obtained a staff representative, appeared to consult with the staff representative during the proceedings, submitted a witness list, and submitted a written statement for consideration. It appeared to me that Applicant was able to help in his own defense during the disciplinary proceedings for the same reasons. At no time during the disciplinary proceedings did Applicant claim that mental illness impaired his ability to participate in the DHO hearing.

R. at 42. This declaration provides strong evidence that Pinson never appeared mentally ill and that the hearing officer didn't violate 28 C.F.R. § 541.6.

Further, we reject Pinson's argument that the district court erred in not addressing—and thus in implicitly denying—Pinson's motion for discovery and appointment of counsel. On these issues, we review for an abuse of discretion. *World Pub. Co. v. U.S. Dep't of Justice*, 672 F.3d 825, 832 (10th Cir. 2012) (discovery rulings); *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (appointment of counsel).

First, we address Pinson's discovery issue. At the district court, he sought his "Psychology and Psychiatric" records for the timeframe between the incident and the disciplinary hearing, as well as other documents from a separate incident that he

- 7 -

thought relevant to his mental competency. R. at 87. He claims that these documents would have proved that he was mentally ill and not responsible for his actions.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010). But a district court may permit discovery if an applicant presents "good reason to believe [the applicant] may be able to demonstrate he is entitled to relief." *Id.* Suffice it to say that the discovery motion was to get documents proving Pinson's mental illness during the disciplinary process. But we have already stated that the standard was whether Pinson appeared mentally ill, and we have found that he didn't. The requested documents wouldn't change that determination. In sum, the district court didn't abuse its discretion in denying Pinson's discovery motion.

Second, we address Pinson's claim that the district court erred by denying his motion for appointed counsel. He claims that the court denied the motion while knowing that he was schizophrenic and then "faulted [him] for failing to prove his own lack of mental capacity." Appellant's Br. 8–9. A district court may appoint counsel for § 2241 applicants if it "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). But "there is no constitutional right to counsel beyond the appeal of a criminal conviction." *Swazo v. Wyo. Dep't of Corrs. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir. 1994). Based on our review of the record, we conclude that the district court didn't abuse its discretion by finding that the interests

of justice didn't require appointing Pinson counsel because Pinson has failed to present even a plausible claim for relief.

Accordingly, we affirm the district court's order denying Pinson habeas relief, discovery, and appointment of counsel.

Entered for the Court


Gregory A. Phillips
Circuit Judge