FILED
United States Court of Appeals
Tenth Circuit

September 26, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

JON LESLIE CHAPMAN,

    Petitioner - Appellant,

v.

ROBERT O. LAMPERT, Director,
Wyoming Department of Corrections;
MICHAEL PACHECO, Warden,
Wyoming Department of Corrections State
Penitentiary; PETER K. MICHAEL,
Wyoming Attorney General,

    Respondents - Appellees.

No. 17-8062
(D.C. No. 2:17-CV-00057-NDF)
(D. Wyo.)

———————————————

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
———————————————

Before **KELLY**, **MURPHY**, and **MATHESON**, Circuit Judges.
———————————————

John Chapman, a state prisoner appearing pro se,[1] seeks a certificate of

appealability ("COA") to challenge the district court's denial of his application for

relief under 28 U.S.C. § 2241. *See* 28 U.S.C. § 2253(c)(1)(A); *Montez v. McKinna*,

———————————————

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Chapman appears pro se, we afford his filings a liberal construction, *see Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010), but we do not craft arguments or otherwise advocate for him, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

208 F.3d 862, 867 n.6 (10th Cir. 2000) (requiring state prisoners bringing a § 2241 claim to obtain a COA before being heard on the merits of the appeal). Exercising jurisdiction under 28 U.S.C. § 1291, we deny a COA and dismiss this matter.

## I. BACKGROUND

Mr. Chapman was convicted of second-degree attempted murder and is serving a 25- to 50-year sentence at the Wyoming State Penitentiary. On September 26, 2016, he sent a letter to the Wyoming Attorney General, the Governor of Wyoming, and the Director of the Wyoming Department of Corrections ("WDOC"). In the letter, he complained about being housed with a sex offender and said, "How would you like for me to deal with it? I'm already doing 50 years for attempt of murder, so, what's another 10 years for an assault, which is all you could charge me with as long as I don't kill [my cellmate]." ROA at 94. He claimed the policy of housing sex offenders with the rest of the prison population was putting the sex offenders at risk of violence from other prisoners. He threatened to file a civil suit on behalf of current and future inmates.

Based on the letter, Mr. Chapman was charged in a prison disciplinary proceeding with threatening another person with imminent or lasting harm, a Major Violation 24 violation ("MJ-24 violation").[2] After a disciplinary hearing, WDOC found Mr. Chapman guilty. Following WDOC policy, WDOC withheld Mr.

---

[2] An MJ-24 violation occurs when an inmate "tak[es] action (verbally, physically, or in writing) which creates the belief of imminent or lasting harm to another person or his/her property" or "harass[es] a victim or victim's family or threaten[s] them with physical harm." ROA at 112.

Chapman's ability to earn good time credit for three months based on the MJ-24 violation. *See* ROA at 75, 162. Mr. Chapman had previously been found guilty of two violations in 2011, which resulted in a suspension of his ability to earn good time credit for nine months. *See* ROA at 75.

Mr. Chapman filed a § 2241 application for a writ of habeas corpus in the United States District Court for the District of Wyoming, arguing WDOC violated his procedural due process rights by withholding good time credit without notice and a hearing. He also argued the MJ-24 violation was a false charge in retaliation for threatening to sue WDOC. Both parties filed motions for summary judgment.

The district court found WDOC had not violated Mr. Chapman's due process rights because he did not have a liberty interest in earning good time credit. The court said Wyoming had not created a liberty interest in prospective good time credit and that Mr. Chapman did not lose any credit that had previously been earned. It also held that he had not suffered an "atypical and significant" hardship that would create a liberty interest. ROA at 436. Regarding his retaliation claim, the court found Mr. Chapman had "failed to provide any evidence to support his claim that WDOC actually issued the MJ-24 violation as retaliation." ROA at 440.

The district court granted the defendants' motion for summary judgment, denied Mr. Chapman's motion for summary judgment, and dismissed Mr. Chapman's

claims against the State with prejudice.[3]  It also declined to grant Mr. Chapman a COA.

## II. **DISCUSSION**

### A. *Legal Background*

Mr. Chapman may not appeal the district court's denial of his § 2241 application without first obtaining a COA.  *See* 28 U.S.C. § 2253(c)(1)(A); *Montez*, 208 F.3d at 867 n.6 (requiring state prisoners bringing a § 2241 claim to obtain a COA before being heard on the merits of the appeal).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

An application under § 2241 attacks the execution of a sentence rather than its validity.  *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011).  When, as here, a

---

[3] The district court granted WDOC's motion for summary judgment on the merits without considering whether Mr. Chapman had exhausted his state remedies.  Although a habeas applicant is generally required to exhaust state remedies before a federal court considers the claim, "a court may deny an application on the merits without reviewing the exhaustion question."  *United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008) (citing *Montez*, 208 F.3d at 866; *see also* 28 U.S.C. § 2254(b)(2) ("habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust [state] remedies").  We hold that reasonable jurists could not debate the district court's merits denial, and we deny a COA, so we also may decline to review the exhaustion question.

state prisoner seeks to challenge "matters that occur at prison, such as deprivation of good-time credits and other prison disciplinary matters . . . affecting the fact or duration of the [prisoner's] custody," that claim must be raised in a § 2241 application rather than under 28 U.S.C. § 2254. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811-12 (10th Cir. 1997).

B. *Analysis*

1. **Due Process**

Reasonable jurists could not debate the district court's denial of Mr. Chapman's § 2241 application on the ground that he lacked a liberty interest in earning good time credit. Due process protections apply only when a person is deprived of a liberty or property interest. *See Cordova v. City of Albuquerque*, 816 F.3d 645, 656 (10th Cir. 2016). "Liberty interests can either arise from the Constitution or be created by state law." *Id.* at 656-57 (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). Inmates do not have a liberty interest in good time credits that are awarded as a matter of discretion. *See Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (finding no liberty interest implicated when analogous "earned time" credits are discretionarily awarded).

Neither Wyoming law nor WDOC prison policies and procedures create a liberty interest in earning good time credits. *See* Wyo. Stat. Ann. § 7-13-420 (providing that the "granting, refusal to grant, withholding or restoration of good time or special good time allowances to inmates shall be a matter of grace and not that of right of inmates"); WDOC Policy and Procedure #1.500 (explaining the

- 5 -

Warden "may" award good time credit depending on an inmate's behavior).[4]  This discretionary language shows that Wyoming did not create a liberty interest in the earning of good time credit.

Mr. Chapman argues WDOC granted and then took away credit, but the record shows WDOC only suspended his ability to earn good time credit for a period of time after his disciplinary violations.  His assertion that he lost previously awarded credits rests on a misunderstanding of how good time credit is earned.  WDOC allows an inmate to earn 15 days of good time for each month served, which potentially reduces an inmate's sentence by one-third.  ROA at 154.[5]  Mr. Chapman mistakenly believes this formula should reduce his sentence by half.  *See* Aplt. Br. at 9 ("Chapman has done nine (9) years and has earned 4.5 years or 1,642 days of good time . . . .").  He believes his release date is later than it should be because WDOC took away credit he had already received, but in fact WDOC has properly calculated his good time credit.  Based on Mr. Chapman's disciplinary violations, WDOC prospectively limited Mr. Chapman's ability to earn good time credit for a certain number of months, which was within WDOC's discretion.  *See* ROA at 75.  There was no removal of previously awarded credit.

---

[4] WDOC policy requires that an inmate be afforded written notice and the opportunity to comment before previously awarded good time credit can be removed. ROA at 164.

[5] For example, if a prisoner were serving a three-month sentence, after the first month he would be entitled to 15 days off his sentence.  After the second month he would also receive 15 days off his sentence, resulting in his release after two months. This is a one-third reduction of the original sentence.

Reasonable jurists could not debate the district court's decision that Mr. Chapman was not denied due process when his ability to earn future good time credits was temporarily curtailed.

## 2. **Retaliation**

A prisoner claiming retaliation must prove that "but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotation omitted). But it is "not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison," so the prisoner must allege specific facts that demonstrate retaliation in response to his exercise of his constitutional rights. *Id.*

Further, an inmate "'cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction' when a hearing officer finds that the inmate committed 'the actual behavior underlying that charge' and affords the inmate 'adequate due process.'" *Pinson v. Berkebile*, 576 F.App'x 710, 713 (10th Cir. 2014) (unpublished) (quoting *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011)).[6]

Mr. Chapman failed to allege specific facts showing that but for a retaliatory motive, he would not have been charged with the MJ-24 violation. Moreover, the parties do not dispute that Mr. Chapman wrote the letter to the state Attorney General and others. And Mr. Chapman acknowledged that he received proper due process for the MJ-24 violation. Reasonable jurists could not debate the district court's decision

---

[6] Although not precedential, we find the reasoning of this unpublished opinion instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

that Mr. Chapman has not shown that his MJ-24 violation was motivated by retaliation.

## III.  **CONCLUSION**

Mr. Chapman has not demonstrated that reasonable jurists could debate the correctness of the district court's grant of the defendants' motion for summary judgment.  We therefore deny a COA and dismiss this matter.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge